NANCY WEINSTEIN *v.* LUKE A. WEINSTEIN
(AC 22843)

Foti, Dranginis and Hennessy, Js.

Argued April 29—officially released September 23, 2003

*Lori Welch-Rubin*, with whom was *Susan W. Wolfson*, for the appellant (plaintiff).

*Wesley W. Horton*, with whom were *Karen L. Dowd* and, on the brief, *Linda T. Douglas*, for the appellee (defendant).

*Opinion*

DRANGINIS, J. The plaintiff, Nancy Weinstein, appeals from the judgment of the trial court denying her motion to open the judgment dissolving her marriage to the defendant, Luke A. Weinstein. In her motion, the plaintiff alleged that the defendant fraudulently misrepresented certain information in the financial affidavit that he submitted to the court at the time of the dissolution. On appeal, the plaintiff claims that the court abused its discretion in denying her motion because she presented sufficient evidence of fraud. We affirm the judgment of the trial court.

The court found the following facts. After nearly seven years of marriage, the parties' marriage was dissolved in May, 1998. One child was born during the

marriage. Following a two day dissolution trial, the court entered orders for custody, visitation, alimony, medical expenses and insurance coverage. The judgment also ordered the defendant to pay to the plaintiff $100,000 as a property settlement within sixty days. Two weeks later, the defendant filed a motion for reconsideration and for reargument, which the court denied.

At the time of the dissolution, the defendant owned a minority interest in a small computer company, known as Product Technologies, Inc. During the pendency of the matter, the plaintiff had deposed the defendant, requesting financial information about the value of his interest in the company. At trial, her expert witness, Kenneth Pia, submitted a report to the court containing his valuation of the defendant's share in the company, which he made on the basis of the financial information contained in the defendant's deposition, discovery and other representations, including the defendant's sworn financial affidavit. Subsequently, the parties stipulated to and the court adopted the $40,000 value the defendant's expert placed on the defendant's minority interest.

In October, 1998, five months after the entry of the judgment of dissolution, the defendant's company was sold to ICL, Inc., another software company, for $6 million. Thereafter, the plaintiff filed a motion to open and to vacate the judgment, asserting that the defendant fraudulently had misrepresented material information during discovery, and in his deposition and financial affidavit.[1] After taking evidence and hearing argument,

[1] "Although the motion to open the judgment was filed more than four months from the date of dissolution; see Practice Book § 17-4; the court has inherent power to determine if fraud exists. *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980). Furthermore, the four month provision in the rules of practice may be waived by the conduct of the parties, such as the participation of the parties in the determination of the motion without objection. See *In re Baby Girl B.*, 224 Conn. 263, 292, 618 A.2d 1 (1992)." *Mattson* v. *Mattson*, 74 Conn. App. 242, 243–44 n.1, 811 A.2d 256 (2002).

the court, in a well reasoned thirty-nine page memorandum of decision, ruled against the plaintiff, finding that she did not proffer clear and convincing evidence that the defendant had made fraudulent misrepresentations to her regarding his financial status. The court predicated its conclusion primarily on the fact "that the plaintiff has not proved, even by the lower preponderance of the evidence standard, that the defendant knew of the eventual sale to ICL, Inc., as of the time of trial on April 15 and 16, 1998. The evidence is clear that ICL, Inc., had not proposed, or even broached, acquisition until June 15, 1998." Thereafter, the plaintiff filed a motion for reconsideration and for reargument, which the court denied. She then filed a motion for permission to file a late articulation, along with a proposed motion for articulation. This court denied those motions. The plaintiff now appeals from the trial court's decision.

The plaintiff claims that the court improperly failed to find that the defendant fraudulently had misrepresented his financial condition at the time of the dissolution of marriage. Specifically, she asserts that the defendant's failure to mention the existence of the company's private placement memoranda[2] and to disclose the fact that a sale of the company was pending, or that ICL, Inc., had offered to buy the company, in his responses to her discovery requests, constituted fraud sufficient to open the judgment of dissolution. The plaintiff further asserts that if she had known about the private placement memorandum, she would not have stipulated that the defendant's minority interest in the company was only $40,000. Finally, the plaintiff maintains that because the dissolution court based its valuation on the parties' stipulation, it would have reached a different result if there were a new trial. We disagree.

[2] A private placement memorandum is used to secure financing to start a new business or to expand a current business.

We begin by setting forth the applicable standard of review that governs our consideration of the plaintiff's claim. "Our review of a court's denial of a motion to open [based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . .

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud. . . . A court's determinations as to the elements of fraud are findings of fact that we will not disturb unless they are clearly erroneous. . . .

"There are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be *clear proof* of the fraud; and (3) there is a substantial likelihood that the result of the new trial will be different. . . ." (Citations omitted; emphasis in the original; internal quotation marks omit-

ted.) *Mattson* v. *Mattson*, 74 Conn. App. 242, 244–46, 811 A.2d 256 (2002).

Resolution of the plaintiff's claim requires us to state certain additional facts. At trial, the defendant testified that his company and ICL, Inc., had worked together for four years, developing and selling smart card systems. In March, 1998, their business relationship began to deteriorate and that by virtue of a termination clause in their software licensing agreement, ICL, Inc., sent to Product Technologies, Inc., a notice of termination, effective September 26, 1998.

Despite the tension between the two companies, they met in April, 1998, in London. The defendant attended that meeting. The exact purpose for the meeting is not clear. Following that meeting, Philip Eames, the managing director of the smart card business for ICL, Inc., and Ross Bailey, a longtime employee of ICL, Inc., began to look at the defendant's company with an eye toward how it would fit into the overall smart card strategy of ICL, Inc. In mid-June, 1998, the defendant and William J. Mangino, Jr., the principal stockholder and president of Product Technologies, Inc., and Eames and Alan P. Wain, the in-house counsel for ICL, Inc., met at the office of Product Technologies, Inc., in Middletown. At that meeting, the defendant and Mangino claimed that Product Technologies, Inc., had superior rights to the jointly developed software. In the hope of avoiding litigation, ICL, Inc., offered to purchase the company for $2.5 million. Subsequently, the defendant and Mangino rejected that offer as too low. Wain exchanged letters with the defendant and Mangino. Each letter expressed substantially the same concern, which was with the ownership of and the intellectual property rights to the software.

One week later, Eames called Mangino to schedule another meeting. On July 1, 1998, the defendant and

Mangino signed a memorandum of understanding with ICL, Inc., which set forth its acquisition of Product Technologies, Inc., for $6 million. As a result of the sale, the value received by the defendant for his minority interest in the company was $1,449,721. Less than three months before the defendant signed the memorandum of understanding, he had claimed the value of his interest to be $40,000.

We now turn to the merits of the plaintiff's appeal. The plaintiff argues that the court adopted too narrow an interpretation of her discovery requests. At the hearing, she introduced three interrogatories and one request for production of documents into evidence. The sixth interrogatory asked the defendant to disclose any information about the sale or purchase of the company. The seventh and eighth interrogatory and the first request for production of documents were aimed specifically at uncovering whether the defendant had applied for new financing and, if so, from whom and when. In finding no fraud, the court performed a careful step by step analysis of the defendant's responses to the plaintiff's discovery requests, limiting its review of the defendant's responses to only those requests that the plaintiff had introduced into evidence.

With respect to the sixth interrogatory, concerning the sale or purchase of the company, we first note that the defendant gave his sworn responses on December 16, 1997. There is no evidence that ICL, Inc., had approached Product Technologies, Inc., about a purchase before that date. The court credited the defendant's responses, during discovery and at the hearing, that ICL, Inc., had not broached the subject of buying the company until May, 1998. The court is responsible for assessing a witness' credibility and, therefore, was free to accept or to reject the defendant's testimony in making findings of fact. See *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905 (" 'trial court is free

to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility' "), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). We will not second-guess the court's determination.

Next, the plaintiff argues that the defendant should have revealed the existence of his company's private placement memorandum in his responses to interrogatories seven and eight and in response to the first request for production of documents.

It is undisputed that the defendant did not disclose a private placement memorandum before the dissolution proceedings. The question becomes whether his nondisclosure amounted to fraud. The record shows that Product Technologies, Inc., had issued a private placement memorandum in 1997 to raise $5 million in equity capital. ICL, Inc., received a copy of the private placement memorandum in late 1997. No action on the private placement memorandum took place. Thereafter, in April, 1998, the previously discussed meeting took place. Whether acquisition of Product Technologies, Inc., was talked about at that meeting is unclear. Mangino and the defendant testified that there was no such discussion, and the court found that other proffered evidence, which was sketchy at best, was not credible.

At no point in 1998 did the two companies discuss the private placement memorandum. We have no quarrel with the court's finding that the plaintiff did not offer any evidence that the defendant was obliged to disclose the existence of the private placement memorandum in response to the plaintiff's discovery requests, which were admitted into evidence, and that his failure to do so constituted fraud. Without having more evidence of the defendant's responses to the plaintiff's discovery requests, the court could not determine

whether the plaintiff had asked in other discovery requests about the efforts of Product Technologies, Inc., to raise equity capital. We therefore conclude that the plaintiff did not meet the high standard of clear proof required for fraud, namely, that she did not proffer evidence that the defendant fraudulently had concealed the existence of the private placement memorandum. See *Jucker* v. *Jucker*, 190 Conn. 674, 678, 461 A.2d 1384 (1983); *Castro* v. *Castro*, 31 Conn. App. 761, 768, 627 A.2d 452 (1993).

The plaintiff also argues that the defendant should have disclosed the private placement memorandum when Pia, the plaintiff's business expert, asked for the business plan for Product Technologies, Inc. The defendant and Pia had met in December, 1997, prior to trial. At that meeting, the defendant gave Pia information about the company so that Pia could appraise the value of the defendant's share in the company. There was no evidence before the court about what happened during that meeting. Pia testified at the hearing that he never specifically asked the defendant about the private placement memorandum, and the defendant testified that Pia did not ask him about it. The court found that the plaintiff did not ask the defendant at his deposition if Product Technologies, Inc., had a business plan. No part of the defendant's deposition, however, was introduced into evidence at the hearing on the motion to open the dissolution judgment. Moreover, the plaintiff did not put anyone on the witness stand to define a "business plan." Rather, the evidence established only that Pia gave a detailed definition of a private placement memorandum. The plaintiff also asserts that the defendant should have revealed the existence of the private placement memorandum when asked if Product Technologies, Inc., had applied to any banks or financial institutions for financing. The court rejected that argument, finding that "[b]ank financing generally means a

loan; banks do not ordinarily make equity investments in companies [the] size and tenure [of Product Technologies, Inc.]." The court found, and we agree, that there was no "correlation between the $5 million offering price for 12,000 shares of series A preferred stock of [Product Technologies, Inc.] and the value of [Product Technologies, Inc.]." The court, thus, found that "[t]here [was] no credible evidence [that the] decision [by ICL, Inc.] to acquire Product Technologies, Inc., was influenced by or in any way the result of the private placement memorandum. There is no evidence that the private placement memorandum was even remotely instrumental in bringing about [the] decision [by ICL, Inc.] to acquire Product Technologies, Inc."

We conclude that the evidence was sufficient for the court to find that the factual record before it failed to support the plaintiff's contention that at the time of the dissolution, the defendant failed to disclose the private placement memorandum to defraud her. "[F]actual findings of a trial court . . . are reversible only if they are clearly erroneous. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citation omitted; internal quotation marks omitted.) *Muller* v. *Muller*, 43 Conn. App. 327, 338, 682 A.2d 1089 (1996).

After concluding that the plaintiff had failed to proffer clear proof of fraud, the court proceeded to analyze her claim to see if she established that "[t]here [i]s a substantial likelihood that the result of the new trial will be different." (Internal quotation marks omitted.) *Billington* v. *Billington*, 220 Conn. 212, 218, 595 A.2d 1377 (1991). The plaintiff claims that had she known about the private placement memorandum, she would

not have stipulated to the $40,000 valuation of the defendant's minority interest in the company. The plaintiff further claims that on the basis of the information in the private placement memorandum, the dissolution court would have reached a different result. Contrary to the plaintiff's claims, the evidence does not show that the dissolution court would have found a different value for the defendant's minority interest in Product Technologies, Inc. Rather, the evidence shows that although Pia initially opposed the $40,000 valuation of the defendant's interest in the company, Pia eventually agreed on that figure. Furthermore, Pia did not testify at the hearing on the motion to open the judgment as to whether $40,000 was the appropriate valuation of the defendant's minority interest in the company. More importantly, the record shows that the plaintiff never asked Pia if his opinion of the value of the defendant's share of the company would have changed if he or the plaintiff had the private placement memorandum before the dissolution trial in April, 1998. Under those facts and giving every reasonable presumption in favor of the court's action, we conclude that the court reasonably found that the new evidence presented likely would not have produced a different result. Cf. *Jackson* v. *Jackson*, 2 Conn. App. 179, 195, 478 A.2d 1026, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984).

We conclude that there was sufficient credible evidence in the record to support the court's conclusion that the defendant's nondisclosure of the private placement memorandum was not fraudulent. As such, the court did not abuse its discretion in denying the motion to open the dissolution judgment. See *Nolan* v. *Nolan*, 76 Conn. App. 583, 586, 821 A.2d 772 (2003). Contrary to the plaintiff's characterization, we do not perceive the defendant's behavior as attempting to conceal the offer by ICL, Inc., to purchase Product Technologies, Inc. This case is similar to the occurrence of a windfall

or an unexpected postdivorce prosperity. Although disconcerting, the other party simply is not entitled to share in that new prosperity. See *Castro* v. *Castro*, supra, 31 Conn. App. 768. Accordingly, the court did not abuse its discretion in refusing to open the dissolution judgment on the ground of fraud.

The judgment is affirmed.

In this opinion the other judges concurred.

