## IN RE TRAVIS R. ET AL.*
### (AC 23919)

Foti, Schaller and McLachlan, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 16, 2003—officially released January 6, 2004

*Roseann C. Canny*, for the appellant (respondent mother).

*Nina F. Elgo*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

McLACHLAN, J. The respondent mother appeals from the denial of her motion to open the judgments of voluntary termination of her parental rights with respect to her two minor children.[1] On appeal, the respondent contends that (1) the court improperly denied her motion to open because the evidence demonstrated that she was under duress when she consented to the terminations and (2) there was sufficient evidence for the court to conclude that it was in the best interests of the children to open the judgments. We affirm the judgments of the trial court.

The respondent and her two minor children have a history of involvement with the department of children and families (department) dating back to 1995. Due to the respondent's substance abuse, criminal history and instances of domestic violence with her husband, the children have been in foster care since approximately January, 1998, and in foster care with their maternal aunt and uncle since February, 2001.

On September 27, 2000, the petitioner, the commissioner of children and families (commissioner), filed termination of parental rights petitions against the respondent with respect to the children.[2] Trial on the termination petitions commenced on September 24, 2001, and, on September 25, 2001, the respondent consented to the termination of her parental rights, as per-

---

[1] The trial court also terminated the parental rights of the respondent's husband, the biological father of both of the children, but because the father was not a party to the motion to open, we refer in this opinion to the respondent mother as the respondent.

[2] The termination petitions were premised on the two children having been adjudicated, in a prior proceeding, neglected or uncared for, and the failure of the respondent and her husband to achieve such a degree of personal rehabilitation as would encourage the belief that she could assume a responsible position in the lives of the children. See General Statutes § 46b-129 (b) and General Statutes (Rev. to 1999) § 17a-112 (c), now (j).

mitted by and in accordance with General Statutes (Rev. to 1999) § 17a-112 (b), now (i). The court, *Levin, J.*, thoroughly canvassed the respondent on her consent to termination. During the canvass, the court specifically inquired of the respondent: "Have any promises or threats been made to you in order to obtain your consent?" The respondent replied, "No." The court also inquired of the respondent's attorney: "[A]fter consultation with your client, are you satisfied that she has knowingly, voluntarily and understandingly consented to the termination petitions?" Counsel responded, "Yes, Your Honor, I am." Accordingly, the court concluded that the respondent had provided her consent knowingly and voluntarily with a full understanding that she was giving up all legal rights to and responsibilities for her children in the future.

Consequently, the court entered termination orders, and the department initiated adoption efforts. The children's aunt and uncle, with whom the children currently reside, expressed interest in adopting them and initiated adoption efforts soon after the entry of the termination judgments. The relevant paperwork had been prepared and the adoption process was underway when, on February 7, 2002, the process was halted when the respondent, acting pro se, filed a motion to open the judgments terminating her parental rights.

The respondent filed the motion to open the judgments pursuant to General Statutes § 45a-719,[3] alleging that she had provided consent to the termination under

---

[3] General Statutes § 45a-719 provides in relevant part: "The court may grant a motion to open or set aside a judgment terminating parental rights pursuant to section 52-212 or 52-212a or pursuant to common law or may grant a petition for a new trial on the issue of the termination of parental rights, provided the court shall consider the best interest of the child, except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition. . . ."

duress.[4] Specifically, the respondent alleged that on September 25, 2001, the second day of termination proceedings, Marcy Wood, a department social worker assigned to the case, approached her and her husband in the hallway of the courthouse and informed them that if they continued to contest the termination, the two children would be removed from their current foster care home with their aunt and uncle and put in separate placements, and that the department also would remove the respondent's newborn from her care. The respondent maintained that Wood's threats induced her to provide consent to the termination proceedings and that the termination judgments should, therefore, be opened on the ground of duress. The court, *Jongbloed, J.*, heard evidence on the motion to open on July 16, and August 13 and 14, 2002.[5] In its memorandum of decision filed December 6, 2002, the court denied the respondent's motion and concluded that the evidence adduced at the hearing failed to establish that her consent had been procured under duress. The court also concluded that opening the termination judgments would not be in the best interests of the children. This appeal followed.

"Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In

---

[4] As of the date the motion to open was filed, a final decree of adoption had not been rendered.

[5] On March 5, 2002, prior to the court hearing evidence on the motion to open, the department filed a motion to dismiss, premised on the contention that the court lacked personal jurisdiction to entertain the motion to open because that motion had not been filed within four months after the termination order, as required by General Statutes § 52-212a. The court denied the motion to dismiss on June 13, 2002, on the ground that the four month limitation period set forth in § 52-212a does not preclude a common-law motion to open predicated on fraud, duress or mutual mistake. See, e.g., *In re Jonathan M.*, 255 Conn. 208, 238, 764 A.2d 739 (2001); *Solomon* v. *Keiser*, 22 Conn. App. 424, 427, 577 A.2d 1103 (1990).

an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 79 Conn. App. 638, 642, 830 A.2d 1134, cert. granted on other grounds, 266 Conn. 933, 837 A.2d 807 (2003).

I

The respondent first claims that the court improperly denied her motion to open because the evidence demonstrated that she was under duress when she provided consent to the termination of her parental rights. We disagree.

"For a party to demonstrate duress, it must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. . . . The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will." (Citation omitted; internal quotation marks omitted.) *Noble* v. *White*, 66 Conn. App. 54, 59, 783 A.2d 1145 (2001).

A motion to open grounded on duress necessarily requires a court to make factual determinations with respect to the elements of duress and, therefore, any allegation of duress must be accompanied by supporting evidence, either documentary or testimonial, on which such factual determinations can rest. See *In re Salvatore P.*, 74 Conn. App. 23, 28, 812 A.2d 70 (2002), cert. denied, 262 Conn. 934, 815 A.2d 135, cert. denied

sub nom. *Smith* v. *Connecticut*, 538 U.S. 1036, 123 S. Ct. 2107, 155 L. Ed. 2d 1067 (2003). Those determinations as to the elements of duress are findings of fact that we will not disturb on appeal unless they are clearly erroneous. See *Noble* v. *White*, supra, 66 Conn. App. 60.

The court found that the respondent had failed to establish the existence of a wrongful act or threat, the effect of which was to compel her to consent to the termination of her parental rights. In reaching that conclusion, the court considered testimony adduced during the hearing as to the content of and circumstances surrounding the respondent's encounter with Wood on the second day of the termination proceedings.

The respondent testified that Wood had approached her in the hallway of the courthouse where she was standing with her husband and threatened that if she did not consent to the termination, the department would prevent her from seeing the children again and that the department also would initiate termination proceedings against the respondent's newborn child. The respondent testified that Wood's threat induced her to consent to the termination.

Contrary to the respondent's rendition of the encounter, Wood testified that she did not initiate a discussion with the respondent, but instead was approached by the respondent and the respondent's husband, and asked about the department's plans with respect to the newborn.[6] Wood further testified that she responded to the

---

[6] The respondent sets forth a third claim on appeal, alleging that the court improperly concluded that her husband did not recall who approached whom in the hallway of the courthouse and initiated the conversation about the children. A review of the husband's testimony reveals that his recollection of who initiated the conversation was not directly explored because, during direct examination, counsel interrupted the husband during his attempt to describe the encounter and did not return to the issue at a later time. Also, to the limited extent that the record discloses the husband's incomplete account of the conversation, it is within the province of the court to determine the effect to be given to that testimony. See *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002). We therefore do not separately address that claim.

inquiry by informing the respondent that the commissioner could file a neglect petition with respect to the newborn child in view of certain ongoing issues surrounding the respondent's suspected relapse into drug use. Wood emphatically denied threatening the respondent or suggesting that the department's actions with respect to any of the respondent's children was contingent on whether she continued to contest the terminations.

After considering those conflicting versions of the encounter, the court found as follows: "The court fully credits Ms. Wood's testimony that she did not seek [the respondent's] consent in exchange for not taking action with regard to [the newborn] and that she did not offer to withhold action on [the newborn] if [the respondent] consented to [the] termination [of her parental rights as to the other two children]." The court also stated: "There simply was no threat that [the newborn] would be removed if [the respondent] did not consent, and there was no threat that [the other two children] would be removed from [their aunt's and uncle's] care and separated if [the respondent] did not consent."

As stated previously, "[t]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Noble* v. *White,* supra, 66 Conn. App. 60.

Although Wood and the respondent offered conflicting testimony, the court was entitled to credit Wood's

testimony as more reliable.[7] "It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Where testimony is conflicting the trier may choose to believe one version over the other . . . as the probative force of the evidence is for the trier to determine." (Citation omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002). Wood's testimony adequately supported the court's ruling that there was no wrongful act or threat on which the respondent's claim of duress could stand. Accordingly, the court's ruling was not clearly erroneous.

We recognize that for many parents, the circumstances surrounding a termination of parental rights proceeding are likely to be enormously stressful and emotional. It is important to underscore, however, that analysis of duress claims focuses not simply on the question of whether the victim *felt* coerced to undertake a particular action, but on whether the act or threat underlying the coercion was wrongful. See 25 Am. Jur. 2d 511, Duress and Undue Influence § 3 (1996). Even if the respondent felt coerced to provide her consent to the termination of her parental rights, such state of mind was not induced, given the findings of the court, by any wrongful acts or threats by Wood.

We conclude that the evidence adequately supported the court's determination that the respondent had failed to demonstrate a wrongful act or threat and, therefore,

---

[7] At the hearing on the motion to open, the court also heard testimony from other individuals, including several members of the respondent's family. Although much of that testimony mirrored the respondent's testimony concerning the nature of her encounter with Wood, the court similarly was entitled to disbelieve it. The sheer volume of testimony propounding one version of an incident does not necessarily correlate with the credibility of that version, and the court still is entitled to disbelieve it in favor of another version.

the court did not abuse its discretion in denying the respondent's motion to open.

## II

The respondent next claims that the court improperly found that it was in the best interests of the children to deny the motion to open. We disagree.

As stated previously, § 45a-719 provides in relevant part that "[t]he court may grant a motion to open . . . a judgment terminating parental rights . . . provided the court shall consider the best interest of the child . . . ."[8] That statutory provision therefore contemplates that once the court is satisfied that there exist valid grounds to grant the motion to open, it can grant such motion only after it conducts an additional inquiry into whether opening the termination judgments would be in the best interests of the children. As the respondent here did not meet that initial threshold, the court was not required to undertake a best interest of the child analysis, but, because it did, we briefly address the respondent's claim that the court's conclusion was improper and do so under the clearly erroneous standard of review. See *In re Jennifer W.*, 75 Conn. App. 485, 492–93, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003).

A review of the evidence reveals that the court's finding as to the best interests of the children was amply

[8] General Statutes § 45a-719 provides in relevant part that "[f]or the purpose of this section, 'best interest of the child' shall include, but not be limited to, a consideration of the age of the child, the nature of the relationship of the child with the caretaker of the child, the length of time the child has been in the custody of the caretaker, the nature of the relationship of the child with the birth parent, the length of time the child has been in the custody of the birth parent, any relationship that may exist between the child and siblings or other children in the caretaker's household, and the psychological and medical needs of the child. The determination of the best interest of the child shall not be based on a consideration of the socioeconomic status of the birth parent or the caretaker."

supported. The record demonstrates that the children had lived with their aunt and uncle for almost three years and were adjusting well to that living situation, had made vast improvements in their behavioral and emotional stability, and had progressed significantly in their therapy sessions. Moreover, the ability of the children's aunt and uncle to provide that type of stable and nurturing environment stands in marked contrast with the respondent's ability to do the same, which, the record reveals, was acutely compromised by her personal tribulations, including an ongoing struggle with substance abuse.

We conclude, therefore, that the court's determination that the best interest analysis weighed strongly in favor of denying the motion to open the judgments was more than adequately supported by the evidence.

The judgments are affirmed.

In this opinion the other judges concurred.