# IN RE CHRISTOPHER G.*
## (AC 30672)

Gruendel, Beach and Alvord, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 21—officially released December 22, 2009

*Nicholas J. Adamucci*, for the appellant (respondent mother)

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Theodore L. Freedman*, guardian ad litem for the minor child.

*David Carron*, for the minor child.

*Opinion*

ALVORD, J. The respondent mother appeals from the denial of her motion to open the judgment of voluntary

termination of her parental rights as to her minor child,[1] Christopher, rendered pursuant to General Statutes § 17a-112 (i).[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The child was born on December 25, 1997. He was adjudicated neglected and uncared for in October, 2003, and placed under protective supervision.[3] The respondent's ability to parent the child did not improve, and, in 2004, the petitioner, the commissioner of children and families, was granted temporary custody of the child. After spending one month in a safe house, the child was placed with the B family. With the exception of a brief reunification with the respondent, he lived with the B family for approximately two years.[4] In May, 2006, he was removed from the care of the B family and placed in the New York home of the respondent's uncle and aunt.[5] All parties hoped that the respondent's uncle and aunt would eventually adopt the child, and the department of

[1] The parental rights of the child's father were terminated by default in the same proceeding. The father has not appealed. We therefore refer to the respondent mother as the respondent in this opinion.

[2] General Statutes § 17a-112 (i) provides in relevant part: "The Superior Court upon hearing and notice . . . may grant a petition for termination of parental rights based on consent filed pursuant to this section if it finds that (1) upon clear and convincing evidence, the termination is in the best interest of the child, and (2) such parent has voluntarily and knowingly consented to termination of the parent's parental rights with respect to such child."

[3] The petition for termination filed on August 3, 2007, by the petitioner, the commissioner of children and families, alleges neglect, physical abuse and domestic violence. It also indicates that the respondent had a history of debilitating epileptic and psychosomatic seizures that rendered her unable to supervise and to provide for the child.

[4] In July, 2005, the child was reunited with the respondent. Soon after, she indicated that she was unable to care for him and voluntarily returned him to the care of the petitioner. He was returned to the B family in September, 2005.

[5] A department of children and families social worker testified that, when possible, preference is given to biological relatives as adoptive resources.

children and families (department) worked to facilitate this process. On November 21, 2007, the respondent presented the court with a written affidavit of consent to the termination of her parental rights.

The court canvassed the respondent and found by clear and convincing evidence that her consent was knowing and voluntary. It also found that termination was in the child's best interest. However, before the court rendered a judgment of termination it was informed by the respondent's attorney, Joseph Mulvey, that the respondent and the preadoptive family had discussed entering into an open adoption agreement.[6] The proposed agreement provided for continuing visitation and contact between the respondent and the child should the adoption of the child by the respondent's uncle and aunt be finalized. It was not sanctioned by the court or the department. Furthermore, it was never intended to be incorporated into the judgment of termination.

The respondent's attorney informed the court that the agreement had been signed by the respondent and faxed to the preadoptive family but that the respondent's aunt and uncle had not yet returned a signed copy. He stated that he did not foresee a problem obtaining the preadoptive family's signature. The court terminated the respondent's parental rights without objection. It stipulated that it would entertain a motion to open the judgment of termination filed on or before December 10, 2007, if the respondent's uncle and aunt failed to enter into the proposed open adoption agreement.

---

[6] A genetic parent may contract with adopting parents, prior to the adoption, for the continued right to visit the adopted child so long as visitation continues to be in the best interest of the child. See *Michaud* v. *Wawruck*, 209 Conn. 407, 551 A.2d 738 (1988). Such agreements are often referred to as "open adoption agreements." Id., 412.

On December 12, 2007, the respondent filed a motion for an emergency hearing to address, in part, the failure of her aunt and uncle to return the signed open adoption agreement.[7] On December 26, 2007, the court held a hearing on the motion. It noted that the respondent's motion was filed two days after the December 10, 2007 deadline but indicated that it would nonetheless consider a motion to open should the respondent choose to make one. The respondent, however, did not move the court to open the judgment of termination or request any other relief. Consequently, the court entered no new orders at the end of the hearing. Despite their withdrawal as adoptive resources, the respondent's uncle and aunt allowed the child to remain in their care until the end of the school year. In June, 2008, the child was returned to the care of the B family. He transitioned well, and the B family was found to be willing and eager to adopt him.

On October 2, 2008, the respondent filed an amended motion to open or set aside the judgment of termination pursuant to General Statutes § 45a-719, alleging that her consent was the product of mutual a mistake.[8] She claimed that her consent to the termination of her parental rights was contingent on the child's adoption by her uncle and aunt. She argued that she would not have agreed to the termination if she had known that the adoption would not be consummated and claimed

[7] The respondent's uncle and aunt withdrew as an adoptive resource on the evening of November 21, 2007. The respondent became aware of her uncle's and aunt's withdrawal approximately one week after the termination proceeding, on November 28, 2007.

[8] General Statutes § 45a-719 provides in relevant part: "The court may grant a motion to open or set aside a judgment terminating parental rights . . . pursuant to common law . . . provided the court shall consider the best interest of the child, except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition. . . ." A common-law motion to open must be predicated on fraud, duress or mutual mistake. See *In re Travis R.*, 80 Conn. App. 777, 781 n.5, 838 A.2d 1000, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

that her mistake was shared by the petitioner. The court heard evidence on the motion on October 23, 2008, and allowed the parties additional time to brief the matter. On December 17, 2008, it denied the respondent's motion. It found that the failure of the proposed adoption was a known possibility; the respondent's consent was knowing and voluntary; and even if the respondent had been mistaken, the mistake was not mutually held by the department. This appeal followed.

"In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action. . . . The manner in which [the court's] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *In re Ilyssa G.*, 105 Conn. App. 41, 45, 936 A.2d 674 (2007), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008).

"A mutual mistake is one that is common to both parties and effects a result that neither intended. . . . Whether there has been such mistake is a question of fact." (Citation omitted.) *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991). "[T]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Travis R.*, 80 Conn. App. 777, 784, 838 A.2d 1000, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

The record contains ample support for the court's determination that the respondent's consent was not the result of a mutual mistake. The court canvassed the respondent at length during the November 21, 2007 termination hearing to ascertain whether her consent to the termination was knowing and voluntary. In response, the respondent acknowledged that she (1) was not under the influence of alcohol, drugs or any prescription medication that would impair her ability to understand the termination proceeding; (2) had the opportunity to talk to her attorney about the termination proceeding and was satisfied with his advice and counsel; (3) understood that the termination enabled the child to be adopted; and (4) understood that she was relinquishing all legal rights and responsibilities for the child, including her right to make decisions and to receive benefits on his behalf, her right to care for him, and her right to custody, guardianship and control over him. The respondent confirmed that her decision to terminate her parental rights was voluntary and free from force or threat and acknowledged that she understood her consent could not be withdrawn once it was accepted by the court.

The court also questioned the respondent regarding her understanding of the open adoption agreement she had signed. She affirmed that she had the opportunity to review the agreement with her attorney, understood its terms and found it to be fair and reasonable. Likewise, the respondent's attorney confirmed that he had reviewed each page of the agreement with the respondent before she signed it and verified that she entered the agreement freely.[9]

---

[9] The respondent asserted for the first time during the October 23, 2008 hearing that she never read or reviewed in their entirety with her attorney either the written affidavit of consent or the open adoption agreement. The court found that the respondent's assertion was not credible. In light of the foregoing, the court's finding is well supported.

Although the parties may have anticipated an adoption by the respondent's uncle and aunt, the record does not support the respondent's argument that her consent was dependent on such adoption. The agreement itself provides: "[A]ll parties agree that the termination of parental rights judgment cannot be reopened for breach of this agreement," and "[t]he birth mother acknowledges that the termination of parental rights . . . is irrevocable, even if the intended adoptive parent(s) do not abide by the terms of the [open adoption agreement]." It also states; "The intended adoptive parent(s) and birth mother acknowledge that [the department] is not a party to this [a]greement and that [the department] has no obligation under any part of this [a]greement. . . . The intended adoptive parent(s) and birth parent acknowledge that this is a private, legally binding contract between themselves, of which [the department] did not expressly nor implicitly approve. Similarly all parties understand the Connecticut judicial system did not expressly nor implicitly approve of this agreement."

Finally, there is no evidence that the mistake was mutual as to the petitioner. Despite its preference for the respondent's uncle and aunt as an adoptive resource for the child, the respondent's caseworker was careful to caution her that no guarantees could be made that an adoption by her uncle and aunt would ever be consummated. Because the record contains considerable support for the court's findings, we conclude that the court did not abuse its discretion when it denied the respondent's motion to open.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] "General Statutes § 45a-719 requires the court to consider the best interest of the child when ruling on a motion to open a judgment terminating parental rights." *In re Ilyssa G.*, supra, 105 Conn. App. 49 n.7. However, if a respondent does not meet the initial threshold to open a judgment, then the court is not required to undertake a best interest of the child analysis. Id.