# IN RE VALERIE G.*
## (AC 33344)
## (AC 33353)

Lavine, Bishop and Peters, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 12—officially released December 20, 2011

*Erich H. Gaston*, with whom, on the brief, was *Alison P. Gaston*, for the appellant (respondent mother).

*John E. Hudson*, for the appellant (intervening maternal grandmother in AC 33353).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Benjamin Zivyon*, assistant attorney general, and *Karen Rabinovici*, certified legal intern, for the appellee (petitioner).

*Opinion*

PETERS, J. These consolidated appeals arise out of a judgment appointing the commissioner of the department of children and families to be the statutory parent of a child with multiple severe disabilities. As in similar cases; see, e.g., *In re Christina M.*, 90 Conn. App. 565,

566–67, 877 A.2d 941 (2005), aff'd, 280 Conn. 474, 908 A.2d 1073 (2006); the issue is not the deep and abiding love of the family members for the child, but whether they have the capacity to provide for her special needs. The child's mother and grandmother appeal from the judgment of the trial court concluding that the commissioner had established the adjudicatory and dispositional grounds for termination of the mother's parental rights pursuant to General Statutes § 17a-112 and that the intervening grandmother had failed to establish that she would be a suitable guardian for the child. We affirm the judgment of the court.

On July 22, 2009, the petitioner, the commissioner of the department of children and families, brought an action to terminate the parental rights of the mother and the father to their minor child, Valerie G. With the mother's consent, Valerie previously had been committed to the custody of the department of children and families (department) as a neglected child. Valerie's maternal grandmother filed a motion to intervene in the proceedings, which was granted by the court on March 25, 2009. On April 1, 2010, the grandmother filed a motion to transfer guardianship of Valerie to herself. On September 30, 2010, after a five day evidentiary hearing, the court rendered a judgment in favor of the petitioner in all respects. The mother has appealed from the termination of her parental rights, and both the mother and the grandmother have appealed from the denial of the grandmother's motion for transfer of guardianship.[1]

In her appeal, AC 33344, the mother claims that the court (1) improperly found that the petitioner had made reasonable efforts to reunify her with Valerie, (2)

[1] The father lives in the Dominican Republic and did not attend or participate in the termination proceedings. He was defaulted by the court for his failure to appear. He is not a party to either of the present appeals.

improperly found that she had failed to achieve suffi-
cient rehabilitation and (3) abused its discretion when
it denied the grandmother's motion for transfer of
guardianship. In her appeal, AC 33353, the grandmother
challenges the court's denial of (1) her motion to trans-
fer guardianship and (2) her motion to open the disposi-
tional phase of the termination proceedings. We affirm
the judgment of the court.

I

TERMINATION OF PARENTAL RIGHTS

The centerpiece of the mother's appeal is her con-
tention that, in the adjudicative phase of the termination
proceedings, the court improperly found that the peti-
tioner had proven, by clear and convincing evidence,
that the mother had failed to achieve rehabilitation such
that she, in the foreseeable future, could take responsi-
bility for Valerie. In support of its judgment granting
the termination petition, the court found that, despite
the mother's unquestioned devotion to her daughter,
she lacked the requisite cognitive skills and mental
health to be a full-time, unsupervised caretaker for Val-
erie because of Valerie's special medical and psycholog-
ical needs.[2] The court further found, by clear and

[2] Valerie suffers from Turner syndrome, a chromosomal abnormality
affecting females in which all or part of one of the sex chromosomes is
absent. The court described Turner syndrome as follows: "Turner syndrome
is a genetic disorder that affects a girl's development. The cause is a missing
or incomplete X chromosome. Girls who have [Turner syndrome] are short,
and their ovaries don't work properly. Most are infertile. They are at risk
for health difficulties such as high blood pressure, kidney problems, diabetes,
cataracts, osteoporosis and thyroid problems. Other physical features typical
of Turner syndrome are: Short, 'webbed' neck with folds of skin from [the]
tops of [the] shoulders to [the] sides of [the] neck, low hairline in the back,
low-set ears, swollen hands and feet. There is no cure for Turner syndrome,
but there are some treatments for the symptoms. Growth hormone often
helps girls reach heights that are close to average. Hormone replacement
can stimulate sexual development. Assisted reproduction techniques can
help some women with Turner syndrome get pregnant."

Valerie requires the use of bilateral hearing aids. In addition to the "sub-
stantial risk" of diabetes, high blood pressure, cardiac problems, cataracts,

convincing evidence, that (1) the department had made reasonable efforts to reunite the mother with Valerie as required by General Statutes § 17a-112 (j) (1),[3] and (2) the mother had failed to achieve personal rehabilitation as required by § 17a-112 (j) (3) (B) (ii).[4] The mother's appeal challenges the sufficiency of the evidence to support these two findings.[5]

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record

osteoporosis, thyroid and kidney problems attendant to Turner syndrome, Valerie has experienced numerous developmental delays that have affected her adaptive, cognitive and communicative skills. Valerie is a special education student. She has been assessed to have a full scale IQ of 70, which is in the borderline range of functioning. Her expressive and receptive language skills were assessed as being below expectation for her age. Valerie also has " 'a significant history of behavioral concerns,' " including aggressive and violent behavior. "She requires one-to-one assistance within a classroom setting and far more supervision within her home environment than what might be expected for a child her age."

[3] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required . . . ."

[4] General Statutes § 17a-112 (j) (3) (B) provides for the termination of parental rights when the child "(ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[5] The mother also asserts that the court failed to make the formal evidentiary finding required by § 17a-112 (j) (1). That finding is implicit in the court's discussion of the evidence of record.

to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Sole S.*, 119 Conn. App. 187, 191, 986 A.2d 351 (2010).

A

The court's memorandum of decision describes the petitioner's efforts to reunite the mother with Valerie. The court found that, in New York and in this state, the mother repeatedly had been offered mental health treatment, substance abuse treatment and parenting education classes. The court further found that the mother "continues to be resistant" to the psychiatric and medical support that has been offered to her. The petitioner did not assist her in finding housing because she continued to live with a man whom the department found unsuitable because of his violence and his drug use.

Without disputing the accuracy of the court's factual findings, the mother contests the propriety of the petitioner's timing in filing the petition for termination of her parental rights and the adequacy of the reunification efforts that followed. The mother contends that the petitioner improperly initiated the termination proceedings too soon after her discharge from inpatient hospital treatment for severe mental illness in New York and her subsequent relocation to this state in June, 2009, so as to be in geographical proximity to Valerie.[6] This

---

[6] The mother was admitted to the hospital in July, 2008. She was discharged in December, 2008, and lived in New York with the grandmother while participating in outpatient care until June, 2009, when she returned to Connecticut to live with her fiance.

contention fails to take into account the fact that, in conjunction with the neglect petition filed on May 13, 2008, the department had issued specific steps that the mother was required to take to enable her to take responsibility for Valerie. The mother thereby was advised, in a timely fashion, to obtain mental health treatment and to refrain from substance abuse. The issues raised by the petitioner in the termination proceedings, therefore, had been amply foreshadowed prior to the mother's hospitalization.

In addition, the court made specific findings about the mother's conduct later in 2009 that supported the timing of the petitioner's pursuit of the termination petition. The mother does not dispute the accuracy of findings that she repeatedly was unsuccessful in her attempts to parent Valerie and was not steadfast in her pursuit of mental health counseling. In light of the urgency of stabilizing Valerie's care, the petitioner cannot be faulted for proceeding with the termination petition when she did.

Alternatively, the mother claims that the petitioner's attempts to reunify her with Valerie were "insufficient as a matter of law." She maintains that, because the department was aware of her significant cognitive and psychological deficits, it was required to do more than to provide her with *access* to remedial services. She argues that, under these circumstances, the department should have taken proactive steps on her behalf, such as providing assistance in finding adequate housing and suitable employment.

In support of this contention, the mother cites *In re Vincent B.*, 73 Conn. App. 637, 809 A.2d 1119 (2002), cert. denied, 262 Conn. 934, 815 A.2d 136 (2003). That case is distinguishable, however, in that it involved a decision by the department to cut off all services to the respondent father. Id., 643. Nothing in that case

establishes an obligation for the petitioner to take on the role of a conservator. To the contrary, with respect to termination proceedings involving a child with special needs, our case law has upheld the authority of a trial court to draw an adverse inference from a parent's failure to access mental health services that might have enabled the parent to assist in the care of the child. See *In re Alexander T.*, 81 Conn. App. 668, 673–76, 841 A.2d 274, cert. denied, 268 Conn. 924, 848 A.2d 472 (2004). We are persuaded, therefore, that the court correctly concluded that the petitioner made reasonable efforts to reunify Valerie with her mother in accordance with § 17a-112 (j) (1).

B

The court further found, pursuant to § 17a-112 (j) (3) (B) (ii),[7] that the mother had failed to achieve such personal rehabilitation as to "encourage the belief that within a reasonable time, considering the age and needs of Valerie, [the] mother could assume a responsible position in Valerie's life." Specifically, the court found that "Valerie is a young child with complex medical (and possibly psychological) needs and is entirely dependent on her caregivers to meet those needs. She has been in the custody of the department for two years, not quite half her life. There is, sadly, little reason to think that [the] mother would be in a position to care for her or to offer appropriate accommodation within a reasonable period of time." The mother does not claim that she presently is able to assume parental responsibility for Valerie. She argues, instead, that the court improperly appraised the likelihood that she would be able to do so in the future. We disagree.

The mother maintains that the court did not attach sufficient significance to her substantial progress in personal rehabilitation. She testified at the evidentiary

---

[7] See footnote 4 of this opinion.

hearing that she was taking her required medications and was making progress in counseling sessions. Although she acknowledged her recent arrest for breach of the peace and a recent positive test for marijuana, the mother argues that there was no evidence that her misconduct had a negative impact on her ability to parent Valerie. She claims that these shortcomings are isolated in nature and do not outweigh her recent endeavors to improve her parenting of Valerie.

The record reveals, however, that there was substantial evidence on which the court could rely in support of its finding to the contrary. During the evidentiary hearing, Stephanie Stein Leite, an expert in child psychology, testified that the mother had only a superficial understanding of her mental health problems and lacked the ability to care for a special needs child such as Valerie. Consistent with this expert testimony, the court noted that the mother's participation in mental health counseling had become "increasingly sporadic" after the fall of 2009 and that she had moved to Connecticut with no plans as to how she would support herself, "apparently relying on her fiance, whom she had accused of violence towards her in the past, and whom she acknowledges has substance abuse issues." The court noted further that, during these termination proceedings, the mother "became emotional and somewhat out of control on several occasions." We are persuaded, therefore, that the trial court's adverse determination must be sustained.

In sum, in the mother's appeal, we conclude that the judgment of the court terminating the mother's parental rights must be affirmed.[8] Its careful and detailed memorandum of decision provides ample support for its finding that the petitioner established, by clear and

---

[8] We recognize the mother's additional argument that her parental rights should not have been terminated because the court should have approved the motion for transfer of guardianship to the grandmother. We address this contention in part II of this opinion.

convincing evidence, that (1) despite the petitioner's reasonable efforts to reunify the mother with Valerie, the mother is unable or unwilling to benefit from further reunification efforts and (2) the mother is not likely to be able, within a reasonable time, to assume a responsible position in Valerie's life.

## II

## MOTION TO TRANSFER GUARDIANSHIP

Both the mother and the grandmother have appealed from the judgment of the court denying the grandmother's motion to transfer guardianship. In support of its judgment denying the motion, the court found that, despite her great love for Valerie, the grandmother lacked a fundamental understanding of, and ability to care properly for, Valerie's substantial special needs. The grandmother challenges this finding, claiming that the court's denial of her motion for transfer of guardianship constituted an abuse of discretion.[9]

---

[9] Although the mother and the grandmother both have appealed from the judgment denying the grandmother's motion to transfer guardianship, only the grandmother challenges the propriety of the court's finding that she was not a "suitable and worthy" caregiver in whom to vest guardianship of Valerie. The grandmother also argues, as does the mother in her appeal, that the court improperly failed to order an interstate compact study. With respect to this latter argument, the mother and grandmother claim that the court, upon granting the grandmother's motion to intervene, was required to order an interstate compact study pursuant to General Statutes § 46b-129 (d) (2). We disagree.

As amended by No. 09-185, § 3 of the 2009 Public Acts (effective June 29, 2009), General Statutes § 46b-129 (d) provides, in relevant part: "(1) (A) If not later than thirty days after the preliminary hearing, or within a reasonable time when a relative resides out of state, the Commissioner of Children and Families determines that there is not a suitable person related to the child or youth by blood or marriage who can be licensed as a foster parent or serve as a temporary custodian . . . any person related to the child or youth by blood or marriage may file, not later than ninety days after the date of the preliminary hearing, a motion to intervene for the limited purpose of moving for temporary custody of such child or youth. . . . (2) Upon the granting of intervenor status to such relative of the child or youth, the court shall issue an order directing the Commissioner of Children and Families to conduct an assessment of such relative and to file a written report with

Questions of custodial placement generally are resolved by a factbound determination of "what is in the best interest of the child . . . as shown by a fair preponderance of the evidence." (Citations omitted.) *In re Shyina B.*, 58 Conn. App. 159, 163, 752 A.2d 1139 (2000). "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could

---

the court not later than forty days after such order, unless such relative resides out of state, in which case the assessment shall be ordered and requested in accordance with the provisions of the Interstate Compact on the Placement of Children, pursuant to section 17a-175. . . ."

In its memorandum of decision denying the grandmother's motion to transfer guardianship, the court noted that the petitioner had conducted an assessment of the grandmother for the purpose of evaluating her as a possible placement resource for Valerie. The court denied the motion on the ground that the grandmother is "not a suitable person in whom to vest the guardianship of this medically complex child." The court's finding that the grandmother was not a "suitable person" in whom to vest guardianship of Valerie foreclosed the possibility that Valerie would be transferred out of this state. Whether such an adverse finding obviates the need for an interstate compact study; see *In re Yarisha F.*, 121 Conn. App. 150, 156–57, 994 A.2d 296 (2010); is an issue that we need not address because the governing statute came into effect at a date subsequent to the filing of the grandmother's motion to intervene.

reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Citations omitted; internal quotation marks omitted.) *In re Karl J.*, 110 Conn. App. 22, 26, 954 A.2d 231, cert. denied, 289 Conn. 954, 961 A.2d 420 (2008).

In this case, the court found that the grandmother "is not a suitable person in whom to vest the guardianship of this medically complex child." Specifically, the court found that "[i]f Valerie did not suffer from Turner's Syndrome, [the grandmother] would, in all likelihood be an appropriate caregiver. However . . . Valerie is a special needs child. She needs to have a caretaker who is functioning at a high level, able to integrate her medical and psychosocial needs. Sadly, the court does not believe that [the grandmother] has that ability." The grandmother claims that the court abused its discretion in reaching this conclusion. We disagree.

To assist in the assessment of the grandmother's capacity to become a possible placement resource for Valerie and to take account of her greater fluency in Spanish as opposed to English, the department arranged for the grandmother to be interviewed by Rudolfo J. Rosado, a Spanish-speaking and "culturally competent" psychologist. Rosado informed the court that the grandmother "lacked comprehension and understanding," which "raised doubt regarding the extent of [the grandmother's] cognitive capabilities." Rosado described the grandmother's overall score on a nonverbal test of intelligence as falling within the mild range of mental deficiency. At the evidentiary hearing, he opined that "the results of the evaluation created

questions about [the grandmother's] ability to understand, follow through and effectively partner with the professionals that would be involved in Valerie's life." The court observed that Rosado's testimony "echoed the department's concerns that [the grandmother] did not appear to understand, or retain, information provided to her by the department."

The grandmother does not contest the accuracy of Rosado's assessment or the propriety of the court's reliance thereon. Instead, she claims that the court abused its discretion by considering only Rosado's ultimate findings and not the specific remedial recommendations that he had made to the department.

In light of the substantial evidence that the petitioner presented to document the grandmother's strengths and weaknesses, we are not persuaded that the department was obligated to conduct the additional evaluations of the grandmother that Rosado had suggested. In its memorandum of decision, the court noted numerous instances in the record that demonstrated the grandmother's limited intellectual capacity and raised reasonable doubts about her ability to care for Valerie's specialized medical needs. This evidence included the grandmother's lack of awareness of Valerie's learning disabilities, her potential heart problems and her risk of developing diabetes. The court further noted that Rosado and department personnel had had difficulty communicating with the grandmother and that they had expressed their concern that the grandmother's lack of intellectual capacity and " 'histrionic and emotional communication style' " prevented her from understanding and processing information necessary to care properly for Valerie. The court also relied on the fact that, at a meeting with the department concerning Valerie's special medical needs and behavioral problems, the grandmother exhibited her lack of understanding by

becoming distressed and tearful and repeatedly asking why Valerie "could not come home."

Viewing this record as a whole, we are persuaded that the court carefully appraised the evidence presented by all of the parties and decided reasonably that vesting guardianship of Valerie in the grandmother was not in Valerie's best interest. Its ruling on both the mother's appeal and the grandmother's appeal must, therefore, be affirmed.

## III

## MOTION TO OPEN

The grandmother also appeals from the denial of her motion to open the dispositional phase of the termination proceedings. On November 26, 2010, following the judgment of the court terminating the mother's parental rights and denying the grandmother's motion to transfer guardianship, the grandmother filed a timely "Motion to Open Disposition and Denial of Transfer of Guardianship." The motion was based on the grandmother's representation that, after the termination proceedings had concluded, Valerie's placement in a preadoptive foster home had failed.[10] The court heard oral argument on December 7, 2010, and denied the motion on March 25, 2011.

"Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its

---

[10] In addition to the allegation that Valerie's foster placement had failed, the grandmother's motion to open reiterated the grounds stated in her prejudgment motions to reargue and for articulation, filed November 4, 2010, and denied by the court on that date.

discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *In re Travis R.*, 80 Conn. App. 777, 781–82, 838 A.2d 1000, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

In its memorandum of decision denying the motion to open, the court noted that, despite the grandmother's claims,[11] "[n]o evidence of . . . good cause [to open the judgment] was before the court . . . ." Furthermore, even if the grandmother had presented reliable evidence in support of her assertions, the court found that such evidence would not have constituted the "good cause" necessary to open the judgment terminating the mother's parental rights. The court stated: "[T]he court is enjoined not to consider the placement of a child posttermination as a factor in its decision-making process . . . . In performing its duties with respect to a [termination of parental rights] trial, this court's responsibility does not include where or with whom a child should live after a termination of parental rights, and thus this court should not enter orders concerning such matters as part of any [termination of parental rights] case disposition: In the dispositional phase of a termination proceeding, the court properly considers only whether the parent's parental rights should be terminated, not where or with whom a child should reside following termination. *In re Sheena I.*, 63 Conn. App. 713, 726, 778 A.2d 997 (2001); see also *In re Davonta V.*, [98 Conn. App. 42, 53 n.11, 907 A.2d 126 (2006), aff'd, 285 Conn. 483, 940 A.2d 733 (2008)]. The

---

[11] The grandmother's motion was intended to demonstrate the inaccuracy of the petitioner's contention, at trial, that these foster parents had custodial skills that were superior to those manifested by the mother and the grandmother.

rationale for this is to prevent a court [from] making a decision to terminate a parent's rights primarily because it considers the child [to] be better off with wealthier, more intelligent, better socially positioned parents. If the court should not make its decision to terminate based on the place the child will reside posttermination, then it is difficult to find that it should [open] that judgment if the placement falls through—sad though that may be. The ability of the parent to be a resource does not alter based on subsequent events. Additionally, to permit judgments to be [opened] whenever the plans of the statutory parent cannot be achieved would lead to more uncertainty and impermanence." (Internal quotation marks omitted.)

In her appeal, the grandmother reiterates the claims that she unsuccessfully raised to the trial court. In our view, however, the court's reasoning is persuasive and its denial of the grandmother's motion, therefore, was not an abuse of discretion. Accordingly, the judgment of the court denying the grandmother's motion to open the dispositional phase of the termination proceedings must be affirmed.

In sum, we conclude that the trial court properly found that, despite the well-meaning and heartfelt concerns of Valerie's mother and grandmother for her well-being, they are unable to take primary responsibility to care for a child with needs as severe as Valerie's. Accordingly, the court properly terminated the mother's parental rights and properly denied the grandmother's petition to become the child's guardian.

The judgment is affirmed.

In this opinion the other judges concurred.