# IN RE CHRISTIAN P. ET AL.*
## (AC 27273)

Flynn, C. J., and Bishop and Lavine, Js.

Argued September 13—officially released October 24, 2006

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Raymond J. Rigat*, for the appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Marcia McCormack*, for the minor children.

*Opinion*

BISHOP, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to three of her minor children,[1] C, K and J.[2] On appeal, the respondent claims that (1) the court's adjudicatory finding of no ongoing parent-child relationship with respect to J was improper because that ground was not alleged in the petition for termination and (2) the court improperly found that she had no ongoing parent-child relationship with her children. We agree with the respondent's first claim and reverse the judgment terminating the respondent's parental rights with respect to J. We affirm the trial court's termination of the respondent's parental rights as to C and K.

The following facts and procedural history are relevant to our discussion and resolution of the issues on appeal. The children were removed from the respondent's custody pursuant to a ninety-six hour hold on May 7, 2001. The court issued an ex parte order of temporary custody because the respondent had been

---

[1] The respondent mother has an older child who is in the custody of that child's father and is not a subject of this action.

[2] The court terminated the parental rights of the children's father, who failed to appear at trial, on the basis of abandonment. The father has not appealed from those judgments. We refer in this opinion to the mother as the respondent.

arrested for larceny, and the children were left unattended. On May 9, 2001, the court approved specific steps for the respondent to take for the children to be returned to her custody. On April 8, 2002, however, the children were adjudicated neglected and uncared for and committed to the custody of the petitioner, the commissioner of children and families (commissioner). On April 14, 2004, the commissioner filed petitions as to each of the children to terminate the parental rights of both of their parents. In support of the petitions, the commissioner identified the following issues: the respondent's substance abuse, lack of parenting skills, transient lifestyle, dirty and unsafe conditions in the home, and failure to address the children's specialized needs. The petitions with respect to all of the children alleged that they had been abandoned.[3] The petitions with respect to C and K also alleged, as to the respondent, that there was no ongoing parent-child relationship, pursuant to General Statutes § 17a-112 (j) (3) (D) and failure of the respondent to achieve a sufficient degree of rehabilitation, pursuant to § 17a-112 (j) (3) (E). The petition concerning J alleged failure to rehabilitate but did not allege the lack of an ongoing parent-child relationship as a ground for termination.

In its memorandum of decision filed November 22, 2005, the court terminated the respondent's parental rights as to all three children on the grounds that she had no ongoing parental relationship with them and that to allow time for the establishment or reestablishment of such a relationship would be detrimental to the children's best interests.[4] This appeal followed.

---

[3] The commissioner withdrew the claim of abandonment as to the respondent at trial.

[4] On May 24, 2006, this court, sua sponte, ordered the trial court to "articulate and/or rectify the record to address whether it found that the [respondent] had failed to rehabilitate [with respect to J, C and K] and to make separate findings as to each child." In its original memorandum of decision, the court stated that it was not terminating the respondent's parental rights on the basis of her failure to achieve a sufficient degree of rehabilitation.

I

The respondent first claims that the court improperly terminated her parental rights with respect to J on the basis of a lack of an ongoing parent-child relationship because the petition failed to assert this ground. We agree.

The severance by the state of a parent-child relationship implicates fundamental rights of both the parent and the child, and, therefore, "it is essential that a parental termination can be decreed only in both strict and literal compliance with the applicable state statutes . . . ." (Internal quotation marks omitted.) *In re Shaiesha O.*, 93 Conn. App. 42, 43, 887 A.2d 415 (2005). In accordance with the mandates of due process, it is axiomatic that parties whose rights are to be affected are entitled to notice. See General Statutes § 45a-716; see also *In re Donna M.*, 33 Conn. App. 632, 638, 637 A.2d 795 (in action for termination of parental rights, "[d]ue process requires notice that would be deemed

In fact, the court credited the respondent for making much progress. In response to this court's order, the court affirmed that it had not terminated the respondent's parental rights as to any of the children on the ground that she had failed to achieve a sufficient degree of rehabilitation. The court utilized the opportunity of this court's order, however, to make new and, arguably, somewhat inconsistent factual findings regarding the respondent's failure to achieve a sufficient degree of rehabilitation.

Although we recognize that our order could have been more clearly stated, it did not form a proper basis for the court to remold its adjudicative findings. "An articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision." (Internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 284, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). To adopt the court's new findings, made after it already had determined that termination as to J is in his best interest, would work to deny both J and the respondent the right to have the court find proof by clear and convincing evidence of an adjudicative ground before moving to a consideration of the child's best interest, as required by statute. Because the trial court went beyond the permissible scope of an articulation, we decline to rely on it to determine whether the court properly terminated the respondent's parental rights as to J.

constitutionally adequate in a civil or criminal proceeding"), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994).

In this case, the petition for termination of parental rights regarding J did not assert lack of an ongoing parent-child relationship as a potential ground for termination. Because the respondent did not have notice of this claim, termination on this ground was improper. Accordingly, there was no adjudicatory basis for the termination of the respondent's parental rights as to J.[5]

## II

The respondent also claims that the court's findings that there was no ongoing parent-child relationship and that allowing time to establish or reestablish the parent-child relationship would be detrimental to the children were clearly erroneous. We are not persuaded.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Halle T.*, 96 Conn. App. 815, 822, 902 A.2d 670 (2006).

General Statutes § 17a-112 (j) (3) (D) provides that the court may grant a petition to terminate parental

---

[5] See footnotes 3 and 4.

rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

"This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only." (Citations omitted; internal quotation marks omitted.) *In re Jonathon G.*, 63 Conn. App. 516, 525, 777 A.2d 695 (2001).

In *In re Jessica M.*, 217 Conn. 459, 586 A.2d 597 (1991), our Supreme Court defined an ongoing parent-child relationship as it applies to noncustodial parents. The court stated that termination of a noncustodial parent's rights requires a finding that "the child has no present memories or feelings for the natural parent." (Internal quotation marks omitted.) Id., 468. When the child does have present memories or feelings, there must be a finding that "no positive emotional aspects of the relationship survive." Id., 470. We recognize that "the evidence regarding the quality of [a parent's] relationship with [a] child must be reviewed in the light of the [parent's] limited access to visitation at the time of

the petition." (Internal quotation marks omitted.) *In re Alexander C.*, 67 Conn. App. 417, 425, 787 A.2d 608 (2001), aff'd, 262 Conn. 308, 813 A.2d 87 (2003).

In the present case, at the time of the trial, the children had been separated from the respondent for more than four years. The respondent initially was resentful of the department of children and families' (department) involvement in the taking of her children. This resentment grew and became an obstruction to the department's efforts to reunify the respondent with her children. As time passed and the children became more dependent on their foster parents, their anger with the respondent grew. During the period that the commissioner had custody of the children, the respondent had no more than two hours of supervised visitation per week. The children, all of whom have special needs, would experience traumatic and emotional episodes at the prospect of visiting with the respondent. The children's therapist indicated that none of the children expressed affection for the respondent or a desire to see her. In February, 2003, C and K elected to terminate visitation with the respondent. At the time of the court's decision, the respondent had not visited with C or K for almost three years. The children's therapist opined that continuing to require the children to discuss contact with the respondent would likely "cause them distress and intensify any symptoms of posttraumatic anxiety and attachment issues," and that it was unlikely that a healthy parent-child relationship could be established within a reasonable time. We conclude, therefore, that the court's findings of a lack of an ongoing parent-child relationship and that the allowance of further time for the reestablishment of a parent-child relationship would be detrimental to the children was legally correct and factually supported.

The judgment terminating the respondent's parental rights with respect to J is reversed and the case is

remanded for further proceedings. The judgments terminating the respondent's parental rights regarding C and K are affirmed.

In this opinion the other judges concurred.