## IN RE ILYSSA G.*
### (AC 28237)

DiPentima, Lavine and Dupont, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 21—officially released December 18, 2007

*Robert C. Koetsch II*, for the appellant (respondent father).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Amy L. Klein*, for the minor child.

*Opinion*

DiPENTIMA, J. The respondent father appeals from the trial court's denial of his motion to open the default judgment terminating his parental rights to his minor child.[1] On appeal, the respondent claims that the court abused its discretion when it denied the motion to open

---

[1] The petitioner, the commissioner of children and families, also sought to terminate the parental rights of the child's mother. The mother consented to the termination of her parental rights and is not a party to this appeal. We therefore refer to the respondent father as the respondent in this opinion.

the judgment and improperly determined that opening the judgment was not in the best interest of the child. We affirm the judgment of the trial court.

The following facts are necessary for the resolution of the respondent's appeal. The child was born in 1997 and has three siblings. In October, 2003, the petitioner, the commissioner of children and families, invoked a ninety-six hour hold on the child and her siblings and removed them from their mother's care pursuant to General Statutes §17a-101g. On October 6, 2004, the court adjudicated the child neglected and committed her to the care and custody of the petitioner. From the time the petitioner removed her from the mother's care in October, 2003, the child lived in foster homes and a residential facility until May, 2006, when she was placed in a preadoptive home with a family who had previously adopted her two older siblings.

On February 25, 2005, the petitioner filed a petition for termination of the respondent's parental rights. On November 2, 2005, the petitioner withdrew the petition. After an unsuccessful effort to reunify the child with her mother, on March 1, 2006, the petitioner again filed a petition for termination of the respondent's parental rights, alleging abandonment and no ongoing parent-child relationship.

On March 1, 2006, the court ordered a hearing on the petition for termination of the respondent's parental rights, with a hearing date of March 29, 2006. The petitioner served the respondent at his last known address in Georgia by certified mail, return receipt requested. The petitioner also served notice by publication through newspapers with circulations covering the areas where the respondent had lived and where he was thought to be living. At a plea hearing for both parents on April 27, 2006, the court found proper service on the respondent in Georgia by publication, and the petitioner noted

that she had previously confirmed service on the respondent in Florida. The respondent did not appear before the court on that date, and the court defaulted the respondent.[2]

On May 30, 2006, the court held a trial on the petition to terminate the parental rights of the respondent. The respondent was not present. At the trial, a social worker from the department of children and families (department) testified about the respondent's lack of an ongoing parent-child relationship and his abandonment of the child. On that same day, the court found that the petitioner had sustained her burden of proof, and the court terminated the respondent's parental rights.

On or about August 21, 2006, the respondent sent a letter to the court in which he stated that he previously had lost his parental rights with respect to his daughter and that he wanted to regain his rights. At the court's direction, the respondent's counsel filed a motion to open the judgment. The petitioner filed an objection to the motion.

On October 17, 2006, the court held a hearing on the respondent's motion. The respondent appeared and testified during the hearing. At the conclusion of the hearing, the court denied the motion. This appeal followed.[3] Additional facts will be set forth as necessary.

[2] The court had appointed attorney Scott Chamberlain to represent the respondent at a previous proceeding. At the plea hearing in this matter on April 27, 2006, Chamberlain was present, but he stated that although he previously had been in contact with the respondent, he had not heard from the respondent for four months or more. The file contains an appearance filed by Chamberlain that is dated March 2, 2006, but is not date stamped by the court. Chamberlain was not present before the court on May 30, 2006, when the court terminated the respondent's parental rights. At the October 17, 2006 hearing on the respondent's motion to open the judgment, the court acknowledged that there was some confusion about whether Chamberlain had been released from his obligation to represent the respondent or whether he merely was excused from a particular proceeding.

[3] Pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief of the petitioner in this appeal.

"Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *In re Travis R.*, 80 Conn. App. 777, 781–82, 838 A.2d 1000, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

To open a default judgment, a moving party must show "reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense." General Statutes § 52-212 (a). Furthermore, § 52-212 (b) requires that "[t]he complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear." "It is thus clear that to obtain relief from a judgment rendered after a default, two things must concur. There must be a showing that (1) a good defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause." (Internal quotation marks omitted.) *Pantlin & Chananie Development Corp.* v. *Hartford Cement &*

*Building Supply Co.*, 196 Conn. 233, 235, 492 A.2d 159 (1985). " 'Since the conjunctive "and" meaning "in addition to" is employed between the parts of the two prong test, both tests must be met.' " Id., 240. As to a termination of parental rights judgment, before granting a motion to open, the court must also consider the best interest of the child. General Statutes § 45a-719.[4]

The respondent met neither prong necessary for the court to open the judgment. First, the respondent did not demonstrate a good defense to the allegations in the petition. The two grounds on which the court terminated the respondent's parental rights were abandonment and the lack of an ongoing parent-child relationship. Neither the respondent's letter to the court, nor the motion filed by his attorney set forth any defense to either of these grounds.[5] Furthermore, when the court asked the respondent during the hearing to address the deficiencies in the motion and specifically to discuss his defense to the underlying petition and the reason for his failure to appear, the respondent did not present a defense to either ground.

A parent abandons a child if "the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ." General Statutes § 17a-112 (j) (3) (A). "Abandonment

[4] "The court may grant a motion to open or set aside a judgment terminating parental rights pursuant to section 52-212 or 52-212a or pursuant to common law or may grant a petition for a new trial on the issue of the termination of parental rights, provided the court shall consider the best interest of the child, except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition. . . ." General Statutes § 45a-719.

[5] The letter and motion focused on the changes that the respondent had made in his life and how his employment and housing circumstances had improved. These facts perhaps would be appropriate to address allegations of a failure to achieve a sufficient degree of personal rehabilitation, which was not a basis for the termination of his rights, but not the grounds of abandonment and lack of an ongoing parent-child relationship.

focuses on the parent's conduct. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . Section 17a-112 [(j) (3) (A)] does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern." (Internal quotation marks omitted.) *In re Jermaine S.*, 86 Conn. App. 819, 839–40, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005).

Parental rights also can be terminated if the court finds that there is "no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ." General Statutes § 17a-112 (j) (3) (D). "[T]ermination of a noncustodial parent's rights requires a finding that the child has no present memories or feelings for the natural parent." (Internal quotation marks omitted.) *In re Christian P.*, 98 Conn. App. 264, 269, 907 A.2d 1261 (2006).

The respondent's testimony during the hearing supported rather than countered the grounds for termination. The respondent testified that he had not seen the child, who was nine at the time of the hearing, since she was one year old and that it was his fault for being absent from her life for eight years. He further testified that his efforts to be involved in her life consisted of visiting the department once in 2004, more than one year after she had been removed from her mother's care, and calling the residential care facility where the

child was to inquire about her care. The respondent also admitted that he had not informed the department or anyone else involved with the case of his whereabouts after he had moved from his last address on file. The testimony did not present a defense to either allegation for termination, and it was in accord with the evidence that had been presented at the termination trial.[6] The court reasonably could have concluded that the respondent did not demonstrate that a defense to the underlying petition existed at the time of the judgment.

Furthermore, as to the second requirement for opening a judgment, the respondent did not show that his failure to appear prior to judgment was the result of mistake, accident or other reasonable cause. The respondent testified that his apartment in Georgia had flooded in 2005 and that he had not been able to attend court in February, 2005, for financial reasons. The reason he gave, however, for not attending the termination of parental rights trial on March 29, 2006, was that he did not know about the hearing. Because the respondent had not notified the court, the department or his attorney that he had moved, notice was sent to the last address on file. The petitioner argues that this is evidence of either the respondent's intention to sever ties with the court, the department and his attorney or extreme negligence. As the petitioner correctly argues: "Negligence is no ground for vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion where the failure to assert a defense was the result of negligence. . . . Negligence of a party or his counsel is insufficient for purposes of § 52-212 to

---

[6] At the termination trial, a social worker from the department had testified that the department had not heard from the respondent in more than one year. The social worker also testified that the child had no memory of the respondent and would not recognize him if she saw him.

set aside a default judgment." (Internal quotation marks omitted.) *Wilson* v. *Troxler*, 91 Conn. App. 864, 872, 883 A.2d 18, cert. denied, 276 Conn. 928, 929, 889 A.2d 819, 820 (2005). Regardless of whether it was intentional or the result of negligence, the respondent's failure to keep the court, the department and his attorney informed of his whereabouts does not qualify for purposes of opening a default judgment as a mistake, accident or other reasonable cause that prevented the respondent from presenting a defense. Thus, because the respondent failed to meet either part of his burden, we conclude that it was not an abuse of discretion for the court to deny his motion to open the judgment.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] In light of our conclusion, we need not reach the issue of whether the court improperly found that it was in the best interest of the child to deny the motion to open the judgment. General Statutes § 45a-719 requires the court to consider the best interest of the child when ruling on a motion to open a judgment terminating parental rights. "That statutory provision . . . contemplates that once the court is satisfied that there exist valid grounds to grant the motion to open, it can grant such motion only after it conducts an additional inquiry into whether opening the termination judgments would be in the best interests of the children." *In re Travis R.*, supra, 80 Conn. App. 786. If a respondent does not meet the initial threshold to open a judgment, then the court is not required to undertake a best interest of the child analysis. Id.