******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE ARIANA S.*
(AC 37652)

Gruendel, Alvord and Dupont, Js.

*Argued May 26—officially released August 26, 2015***

(Appeal from Superior Court, judicial district of New Britain, Juvenile Matters, Cohn, J.)

*Joshua Michtom*, assistant public defender, for the appellant (respondent father).

*Tammy Nguyen-O'Dowd*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Gregory T. D'Auria*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Robert W. Lewonka*, for the minor child.

*Opinion*

ALVORD, J. The respondent father appeals from the trial court's denial of his motion to open the judgment terminating his parental rights to his minor child, Ariana S.[1] On appeal, he claims that the court abused its discretion in rejecting his claim that notice by publication in the Miami Herald was inadequate, constituting reasonable cause preventing his participation in the termination trial. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The child was born in 2005. In November, 2012, she was adjudicated neglected and committed to the custody of the Commissioner of Children and Families (commissioner).[2] On July 2, 2013, the petitioner filed a petition to terminate the respondent's parental rights as to the child. On July 10, 2013, the petitioner filed a motion for order of notice by publication.[3] In that motion, the petitioner listed as the respondent's last residence "an unknown address in Florida." The motion stated that publication of the notice in the Miami Herald "is considered most likely to come to his attention." The court had before it an affidavit detailing the efforts made by the Department of Children and Families (department) to locate the respondent. The affidavit indicated that the child's mother had informed the department that the respondent resided in Florida, but she could not provide the department with a specific address. The department sent a certified letter to a Haines City, Florida address obtained from a Lexis/Nexis search, but the letter was returned as undeliverable. The department additionally conducted: a LocatePLUS search, an Anywho.com search, and searches of the Connecticut Department of Correction, Department of Motor Vehicles, and Judicial Branch records. On July 10, 2013, the court granted the petitioner's motion for order of notice by publication, and notice of the petition for the termination of the respondent's parental rights was published in the Miami Herald on July 12, 2013. The notice indicated that a court date for the termination petition was scheduled for August 7, 2013. On that date, the respondent did not appear, publication was confirmed, and the court entered a default judgment against him for failure to appear.

A trial on the petition was held on March 26 and 27, 2014. In a memorandum of decision filed on July 23, 2014, the court, *Elgo, J.*, terminated the respondent's parental rights as to the child after finding that the department had made reasonable efforts to locate him,[4] and that he was unable and unwilling to benefit from reunification efforts. The court found that the petitioner had proven the termination grounds of abandonment and no parent-child relationship. See General Statutes § 17a-112 (j) (3) (A) and (D). The court issued written findings as to the statutory factors; General Statutes

§ 17a-112 (k); and concluded that termination of the respondent's parental rights was in the child's best interest.

The respondent maintains that he did not learn of the termination of parental rights proceedings until his return to Connecticut in July, 2014. On October 8, 2014, the respondent filed a motion to open the judgment terminating his parental rights. In his motion, he argued, inter alia, that he was prevented from appearing at the proceedings due to reasonable cause. He claimed that the abode service of the motion for an order of temporary custody and neglect petition at the Middletown address; see footnote 2 of this opinion; was insufficient, as he was living in Florida at that time. He further claimed that publication of the termination notice in the Miami Herald was insufficient because he had never resided in Miami-Dade county and, thus, publication in that location had "no chance" of placing him on notice. He also claimed that viable defenses to both grounds for termination, abandonment and no ongoing parent-child relationship, were available to him at the time of the proceedings.

The petitioner filed an objection to the respondent's motion to open the judgment, in which the petitioner argued that the respondent had failed to allege that opening the judgment would be in the best interest of the child, and that he had failed to show both that he had a good defense to the termination petition at the time of judgment and that reasonable cause prevented him from raising it. The respondent filed a reply in which he argued, inter alia, that it would be in the child's best interest to open the judgment. On December 18, 2014, the court held a hearing, during which the respondent and the department's social worker testified. The sole subject of the hearing was the respondent's claim that reasonable cause prevented him from appearing.[5] In its January 8, 2015 ruling, the court, *Cohn, J.*, denied the respondent's motion to open the judgment, concluding that he had "not satisfied the court that he was not properly served," and, therefore, that he had "failed to demonstrate that he was prevented, at the [termination of parental rights] trial, from presenting a defense . . . ." This appeal followed. Additional facts will be set forth as necessary.

We begin with our standard of review. "Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The

manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." *In re Zen T.*, 151 Conn. App. 724, 728–29, 95 A.3d 1258, cert. denied, 314 Conn. 911, 100 A.3d 403 (2014), cert. denied sub nom. *Heather S.* v. *Connecticut Commissioner of Children & Families*, U.S. , 135 S. Ct. 2326, 191 L. Ed. 2d 991 (2015).

We next set forth the applicable law governing a motion to open a judgment terminating parental rights. "To open a default judgment, a moving party must show 'reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.' General Statutes § 52-212 (a). Furthermore, § 52-212 (b) requires that '[t]he complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear." *In re Ilyssa G.*, 105 Conn. App. 41, 45, 936 A.2d 674 (2007), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008). "It is thus clear that to obtain relief from a judgment rendered after a default, two things must concur. There must be a showing that (1) a good defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause. . . . Since the conjunctive and meaning in addition to is employed between the parts of the two prong test, both tests must be met. . . . As to a termination of parental rights judgment, before granting a motion to open, the court must also consider the best interest of the child. General Statutes § 45a-719."[6] (Citation omitted; internal quotation marks omitted.) Id., 45–46.

The respondent's sole claim on appeal concerns the adequacy of the notice provided by publication in the Miami Herald. He does not claim that constructive notice by publication was inappropriate. Rather, he argues that this constructive notice should have been published in a newspaper having substantial circulation "in the Orlando area," because the only information the department had as to his location was two former addresses, one in Kissimmee and the other in Haines City.[7] He further argues that the court erred in relying upon the reputation of the Miami Herald, its statewide reach, and the respondent's transient status in concluding that the publication in the Miami Herald was adequate, when there was no indication that the respondent had lived in the Miami area or that the Miami Herald "has substantial circulation in or near the Orlando area . . . ."

"Notice by publication, although sometimes necessary, is not the preferred method for assuring full participation in so significant an impairment of constitutionally protected parental rights. . . . Notice is not a mere perfunctory act in order to satisfy the technicalities of a statute, but has, as its basis, constitutional dimensions. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Citation omitted; internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 295–96, 618 A.2d 1 (1992). General Statutes § 45a-716 (c) provides for notice by publication of a hearing for the termination of parental rights. Section 45a-716 (c) provides in relevant part: "If the address of any person entitled to personal service or service at the person's usual place of abode is unknown, or if personal service or service at the person's usual place of abode cannot be reasonably effected within the state, or if any person enumerated in subsection (b) of this section is out of the state, a judge or the clerk of the court shall order notice to be given by registered or certified mail, return receipt requested, or by publication at least ten days before the date of the hearing. Any such publication shall be in a newspaper of general circulation in the place of the last-known address of the person to be notified, whether within or without this state, or, if no such address is known, in the place where the petition has been filed."

The United States Supreme Court has also provided general principles of adequate notice. "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance . . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. . . .

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (Citations omitted.) *Mullane* v. *Central Hanover Bank & Trust Co., Trustee*, 339 U.S. 306, 314–15, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Notice by publication is adequate "where it is not reasonably possible or practicable to give more adequate warning." Id., 317; see *Mennonite Board of*

*Missions* v. *Adams*, 462 U.S. 791, 799, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983) ("use of . . . less reliable forms of notice [including notice by publication] is not reasonable where . . . an inexpensive and efficient mechanism such as mail service is available" [internal quotation marks omitted]).

The respondent, citing *Mullane* and *Mennonite Board of Missions*, argues that "notice must be tailored to the circumstances of the case [and] the trial court's ruling would make sense only if nothing had been known about the respondent's whereabouts." His claim centers on the traveling distance between the city of Miami and the cities of Kissimmee and Haines City. Under the facts of this case, we disagree that the court abused its discretion in denying the motion to open after determining that it could not conclude that the department "failed to choose an adequate means to give notice."

The respondent relies heavily on the department's knowledge of two addresses, one in Haines City and the other in Kissimmee. He points to the department's efforts to contact him at a Haines City address, which was obtained from a Lexis/Nexis search. The certified letter sent there, however, was returned as undeliverable, and, thus, the department worker's testimony was that they were never able to confirm that anyone with the respondent's name actually lived at that address. With regard to the Kissimmee address that the department had in its file, the phone number listed for that address "was not taking calls."[8] The respondent does not take issue with the court's finding that the respondent had not lived in Kissimmee since 2011. Thus, although the respondent argues that the fact that the department was aware of prior addresses in Kissimmee and Haines City required, in this case, the department to publish notice "in the Orlando area," the court recognized that the calculated efforts to reach the respondent at either of those two addresses, one of which had never been confirmed, were unsuccessful. The court noted that the respondent had lived in different locations while the department was attempting to locate him and found that the respondent was not living at any of those addresses at the time the department attempted to contact him at those locations.[9]

The court's conclusion that the notice provided to the respondent was reasonable finds further support in the testimony of the department worker. Her testimony confirmed the information in her affidavit that the child's mother had mentioned to her that the respondent was residing in Florida, but that she did not have a specific address for him. The department worker further testified that the general practice is to publish notice in the Miami Herald when the department has no confirmed address but has information that the person is living in Florida. She stated that this practice

was based on the Miami Herald having the widest circulation in Florida, and the Miami-Dade metropolitan area being the largest metropolitan area in the state.

To the extent that the respondent relies specifically upon the alleged failure to comply with § 45a-716 (c), we disagree that the court abused its discretion in concluding that the respondent failed to demonstrate that he was improperly served. Considering that the efforts to reach the respondent at either the Kissimmee address or the Haines City address were unsuccessful, the department relied on the only other information it had as to the respondent's whereabouts, which consisted of information obtained from the child's mother that the respondent was somewhere in Florida. Therefore, under the factual circumstances of this case, constructive notice by publication in the newspaper presented as having the widest circulation in Florida was not inadequate.

We cannot conclude that the court abused its discretion in determining that the respondent had not met his burden of demonstrating reasonable cause that prevented him from presenting a defense to the termination petition. He failed to prove that publication in an Orlando area newspaper, the locality where two calculated notification efforts had failed, would have provided him with notice of the termination proceedings.[10] The respondent presented no evidence at the hearing that he would have seen the notice had the department considered the addresses in Kissimmee and Haines City, which were the subject of its failed calculated efforts to contact him, as last-known addresses, and published notice in a newspaper with "substantial circulation in or near the Orlando area . . . ."[11] "On a motion to open the moving party must not only 'allege,' but must also make a 'showing' sufficient to satisfy the requirements of § 52-212." *Pantlin & Chananie Development Corp.* v. *Hartford Cement & Building Supply Co.*, 196 Conn. 233, 241, 492 A.2d 159 (1985). Moreover, the respondent does not argue that publication should have been made in the place where the termination petition was filed, which would be New Britain, as § 45a-716 (c) directs in cases in which no address is known.

Considering that the department's efforts to reach the respondent by telephone at an address it retained in its file and by certified mail at a potential address it obtained from a Lexis/Nexis search proved unsuccessful, and also taking into account the information provided by the child's mother that the respondent generally was living in Florida, we cannot conclude that the trial court abused its discretion in determining that the respondent did not carry his burden of proving that reasonable cause in the form of inadequate notice prevented him from presenting a defense to the termination petition.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** August 26, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of Ariana's mother were also terminated. Because she is not a party to this appeal, we refer in this opinion to the respondent father as the respondent.

[2] On August 28, 2012, the petitioner filed a motion for order of temporary custody and a neglect petition. At the hearing on the motion for the order of temporary custody on September 7, 2012, the court confirmed abode service for the respondent at an address in Middletown. Abode service at the same address in Middletown was again confirmed at the plea hearing on the neglect petition on October 4, 2012. At that hearing, the respondent was defaulted for failure to appear. The service was made at that address based on a search of motor vehicle records, which resulted in information indicating that the respondent had registered a motor vehicle at that address.

[3] The petitioner had filed a previous motion for order of notice by publication on July 2, 2013. The accompanying affidavit stated that "[m]other does not have any information as to [the respondent's] location . . . ." That motion was denied by the court, which noted that the affidavit needed to provide information concerning why the publication was to be made in Florida. The petitioner then filed the second motion on July 10, 2013, with an updated affidavit that included the information received from the child's mother, who told the Department of Children and Families that the respondent resided in Florida but that she could not provide a specific address.

[4] The court reiterated the efforts listed on the affidavit filed on July 10, 2013.

[5] On November 13, 2014, the parties appeared before the court, and the court at that time proposed that the reasonable cause prong be considered first. If the respondent was able to establish reasonable cause, then the remainder of the prongs would be considered. The parties did not object to proceeding in this manner.

[6] General Statutes § 45a-719 provides in relevant part: "The court may grant a motion to open or set aside a judgment terminating parental rights pursuant to section 52-212 or 52-212a or pursuant to common law or may grant a petition for a new trial on the issue of the termination of parental rights, provided the court shall consider the best interest of the child, except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition. . . . For the purpose of this section, 'best interest of the child' shall include, but not be limited to, a consideration of the age of the child, the nature of the relationship of the child with the caretaker of the child, the length of time the child has been in the custody of the caretaker, the nature of the relationship of the child with the birth parent, the length of time the child has been in the custody of the birth parent, any relationship that may exist between the child and siblings or other children in the caretaker's household, and the psychological and medical needs of the child. The determination of the best interest of the child shall not be based on a consideration of the socioeconomic status of the birth parent or the caretaker."

[7] The petitioner argues that the respondent "provided absolutely no evidence at the hearing that publication in a newspaper within the Orlando area would have provided him notice of the proceedings and changed the outcome of this case."

[8] We note that the attempt to reach the respondent by phone at the Kissimmee address was not listed in the affidavit as one of the efforts made to locate the respondent.

[9] The court made the following additional factual findings concerning the respondent's location. The respondent lived in Haines City from 2009 to 2010. From 2010 to 2011, the respondent lived in Kissimmee. The child and her mother lived with the respondent in Kissimmee for part of 2011, but by the later part of 2011, the child and her mother had moved to Connecticut. From 2012 to 2013, the respondent lived in Winter Haven, Florida, and on July 19, 2014, the respondent returned to Connecticut.

[10] In his appellate brief, the respondent relies heavily on General Statutes § 1-2, which provides in relevant part: "Whenever notice of any action or other proceeding is required to be given by publication in a newspaper,

either by statute or order of court, the newspaper selected for that purpose, unless otherwise expressly prescribed, shall be one having a substantial circulation in the town in which at least one of the parties, for whose benefit such notice is given, resides." He argues that § 1-2 clarifies the requirement contained in § 45a-716 (c) that "publication shall be in a newspaper of general circulation in the place of the last-known address of the person to be notified . . . ." Thus, he argues that the department should have published the notice in a newspaper having "substantial circulation" in the *town* in which he last resided.

We conclude that this argument is unavailing for the same reasons that the respondent's argument fails under his construction of § 45a-716 (c). The respondent has not demonstrated that the court abused its discretion in concluding that he failed to prove that reasonable cause prevented him from presenting a defense to the termination petition. We also note, as the petitioner argues, that the respondent did not raise § 1-2 to the trial court, and, thus, the court had no opportunity to consider its applicability to this situation in light of the undisputed applicability of § 45a-716 (c), the provisions of which specifically govern notice by publication of termination of parental rights proceedings.

[11] See footnote 7 of this opinion.

─────────────────────────────