******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

IN RE SKYLAR F.*

(AC 42499)

DiPentima, C. J., and Elgo and Sullivan, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial
court denying his motion to open the judgment of neglect concerning
the father's minor child that was rendered after the father was defaulted
for his failure to attend a case status conference. On appeal, the father
claimed that the trial court improperly denied his motion to open because
the record did not support a finding that he received actual adequate
notice of a case status conference in violation of his right to due process
of law. *Held*:

1. The respondent father could not prevail in his claim that this court should
exercise de novo review pursuant to the test articulated by the United
States Supreme Court in *Mathews* v. *Eldridge* (424 U.S. 319), as he
conflated the alleged due process violation in the court's rendering of
a default judgment at the case status conference with the court's denial
of his motion to open, from which he appealed to this court; the manifest
purpose of a motion to open a default pursuant to the applicable rule
of practice (§ 35a-18) and statute (§ 52-212) is to provide a mechanism
by which a defaulted party has an opportunity to be heard, and because
the father, by filing the motion to open, invoked his right to due process,
specifically, the right to be heard as to why he failed to appear and
whether he had a good defense, he was afforded a hearing and thereby
exercised his right to due process, and, therefore, this court could not
conclude that the father was deprived of his right to due process and
reviewed the merits of his claim under the abuse of discretion standard
applicable to the appeal of a denial of a motion to open a default
judgment.

2. The trial court did not abuse its discretion in denying the respondent
father's motion to open the default judgment: the father did not present
a good defense, as the court had expressed concerns over the father's
substance abuse and domestic violence, and the father addressed neither
concern in his motion to open, and the father did not show that his
failure to appear was the result of mistake, accident or other reasonable
cause, nor did he particularly set forth the reason why he failed to
appear, as the record demonstrated that the father's attorney was present
when the case status conference was scheduled, had scheduled the case
status conference at a particular time for the father's convenience, and
did not assert that the father lacked notice of the scheduled court date,
and there was no indication that the father and his attorney were unable
to communicate with each other or that he was unaware of the outcome
of a temporary custody hearing, at which the court scheduled the case
status conference for a time requested by the father through his attorney
and sustained the order of temporary custody; moreover, the father
failed to abide by the requirement of the applicable rule of practice
(§ 35a-18) that his written motion be verified by oath, and given that
the father had actual notice of the fact that a petition of neglect was
filed, was an active participant and was fully represented by counsel in
a contested order of temporary custody hearing, and had elected to be
absent on the day the court issued orders relating to custody of his
child and the scheduling of subsequent proceedings, it was the father's
burden to keep the court, his attorney and the department informed of
his whereabouts and his intentions with respect to exercising responsi-
bility for his child.

Argued May 16—officially released July 2, 2019**

*Procedural History*

Petition to adjudicate the respondents' minor chlid
neglected, brought to the Superior Court in the judicial
district of New Haven, Juvenile Matters, where the

court, *Conway, J.*, issued an ex parte order of temporary custody and removed the minor child from the respondents' care; thereafter, the court, *Burke, J.*, sustained the order of temporary custody; subsequently, the respondent father was defaulted for failure to appear; thereafter, the court, *Conway, J.*, rendered judgment adjudicating the minor child neglected and committing the minor child to the custody of the petitioner; subsequently, the court, *Marcus, J.*, denied the respondent father's motion to open the judgment, and the respondent father appealed to this court. *Affirmed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent father).

*Renee Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ELGO, J. The respondent father appeals from the judgment of the trial court denying his motion to open the judgment of neglect that was rendered after the respondent was defaulted for his failure to attend a case status conference.[1] On appeal, the respondent claims that the court improperly denied his motion to open because the record does not support a finding that he received "actual adequate notice of the [case status] conference in violation of his rights to the due process of law." We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. Skylar was born in September, 2018. On September 28, 2018, the Department of Children and Families (department) assumed temporary custody of Skylar pursuant to a ninety-six hour administrative hold. On October 1, 2018, the petitioner, the Commissioner of Children and Families, filed a neglect petition on behalf of Skylar. On that same date, the department obtained an ex parte order of temporary custody. A trial on the order of temporary custody was heard by the court on October 12 and 19, 2018. At the close of the first day of trial, the respondent received permission to be excused from attending the second day of trial. At the close of the second day of trial, the court ruled from the bench and sustained the order of temporary custody.

After the court ruled from the bench, the parties scheduled a case status conference. The following colloquy occurred:

"The Clerk: November 27th at nine?

"[The Mother's Counsel]: I guess so.

"[The Department's Counsel]: Can [the respondent] be notified of that date, please, your honor?

"The Court: So ordered.

"[The Respondent's Counsel]: Actually, is it possible to get a three o'clock case status conference?

"[The Mother's Counsel]: That date? No. I have a trial from two to five.

"[The Respondent's Counsel]: He won't be able to make it that's a work day. He could lose his job.

"The Court: You try it for a different time?

"The Clerk: We can do December 4th at two.

"[The Respondent's Counsel]: Is it possible to do three? . . .

"The Clerk: Would nine o'clock work or no?

"[The Respondent's Counsel]: No, he'll be at work. He works until two so three is—

"The Clerk: So it doesn't matter what day?

"[The Respondent's Counsel]. Yes. It has to be three."

The case status conference then was scheduled for December 4, 2018, at 3 p.m. The respondent did not attend the scheduled case status conference, but his attorney was present. The department at that time asked the court to render a default judgment as to the adjudication of neglect against the respondent for his failure to appear and to proceed to the disposition of commitment. The respondent's attorney objected but did not indicate that the respondent did not have knowledge of the status conference. Instead, the respondent's attorney told the court that the respondent could still be at work and that he was unable to reach the respondent, who was not answering his phone. On that same date, the court adjudicated Skylar neglected and committed her to the care and custody of the petitioner.

On December 31, 2018, the respondent filed a motion for articulation in which he asked the court to articulate the factual basis for its order sustaining the ex parte order of temporary custody. On that same date, the court issued an articulation, in which it found the following relevant facts: "At the time of her birth, [Skylar's mother and the respondent] had a sibling of Skylar who had been committed to [the department] and [had] a pending termination of parental rights matter. Neither [Skylar's mother nor the respondent] addressed their issues that caused the sibling to be committed. . . . There were two expired orders of protection between [Skylar's mother and the respondent]. . . . Prior to [the sibling's] removal, [the respondent] reportedly hit [Skylar's mother], giving her a bloody nose. Also, [Skylar's mother] sent [a department social worker] an e-mail, in June of 2018, stating that she wanted [the department] to know that she and [the respondent] had been lying and they had been living together and they have had domestic violence issues. [Skylar's mother] said that [the respondent] hit her and kicked her out of the home. [Skylar's mother] would have to sleep on the front porch or at the hospital [emergency room] areas. . . . [A department social worker] reported that for Skylar to be returned, [the respondent] would have to show that he completed an updated substance abuse evaluation and domestic violence program. He needs to avoid domestic violence. There was testimony concerning [the respondent] having a bottle in a paper bag in his car. [The respondent] testified that it was . . . nonalcoholic. The court [found] that not credible."

On the basis of the credible testimony and evidence elicited at trial, the court found that the petitioner had "sustained the burden to prove by a fair preponderance of the evidence that under the doctrine of predictive neglect, that as of the date of the ex parte [order of temporary custody], it was more likely or more proba-

ble than not, that if Skylar were allowed to be placed in the care of either [Skylar's mother or the respondent], independently or in the care of both of them, Skylar would have been in immediate physical danger from her surroundings and immediate removal was necessary and continues to be necessary to ensure her safety." (Emphasis omitted.) Accordingly, the court sustained the ex parte order of temporary custody.

On January 8, 2019, the respondent filed a motion to open the judgment committing the minor child to the petitioner's custody.[2] Following a hearing held on January 10, 2019, the court denied the respondent's motion to open. First, the court explained that the respondent had failed to comply with the requirements of Practice Book § 35a-18[3] for filing a motion to open in juvenile matters, as his motion was not verified by oath. Second, the court considered the transcript of the proceedings on October 19, 2018, and concluded that the respondent's attorney was responsible for providing the respondent with notice of the case status conference. Third, the court explained that, in its December 31, 2018 articulation, it had specified the reasons why the order of temporary custody was sustained, and the respondent's motion had not demonstrated how those things had changed. On January 22, 2019, the respondent filed the present appeal from the judgment denying his motion to open the judgment of neglect.[4]

On appeal, the respondent claims that he was "entitled to have the judgment opened as a matter of law because the record of the proceedings below did not support a finding that he received actual notice of the status conference in violation of the due process of law." We disagree.

As a preliminary matter, the respondent contends that although ordinarily this court would be constrained to review a lower court's decision to deny a motion to open a default judgment as to whether the court acted in clear abuse of its discretion, this court should exercise de novo review pursuant to the test articulated by the United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).[5] The respondent argues that de novo review pursuant to *Mathews* is appropriate in cases like this one where the "lower court proceedings [show] that a litigant was denied the due process of law in a matter customarily left to the lower court's sound discretion . . . ." Specifically, the respondent contends that he was deprived of due process of law because he did not receive "actual adequate notice" of the case status conference and, thus, he was not given an opportunity to be heard. We are not persuaded.

To support his contention that this court should apply the balancing test in *Mathews* to this case, the respondent cites to this court's decision in *In Re Shaquanna M.*, 61 Conn. App. 592, 767 A.2d 155 (2001). In that case,

the issue was "[w]hether the denial of a continuance [had] been shown by the respondent to have interfered with her basic constitutional right to raise her children, thereby depriving her of procedural due process . . . ." Id., 600. The court in *In Re Shaquanna M.* explained that "the difference in the two analyses [of the abuse of discretion standard and the *Mathews* balancing test] relates to the lack of discretion involved in providing procedural safeguards to satisfy procedural due process when dealing with the irrevocable severance of a parent's rights, as opposed to the presence of discretion in granting or denying a continuance in the garden variety civil case with its lesser standard of proof." Id., 605.

The respondent's reliance on *In Re Shaquanna M.* is misplaced. The respondent claims that he did not receive "actual adequate notice" of the case status conference, at which the default judgment was rendered. The issue on appeal, however, is the trial court's denial of the respondent's motion to open. The respondent asserts that, as a matter of law, the trial court was required to grant the motion to open. As such, he conflates the alleged due process violation in the court's rendering a default judgment at the case status conference with the court's denial of his motion to open. The respondent contends that he "was given no opportunity to be heard in connection with the neglect petition," but that assertion is plainly incorrect. The manifest purpose of a motion to open a default pursuant to Practice Book § 35a-18 and General Statutes § 52-212 is to provide a mechanism by which a defaulted party has an opportunity to be heard. By filing the motion to open, the respondent invoked his right to due process, specifically, the right to be heard as to why he failed to appear and whether he had a good defense. Accordingly, the denial of a motion to open is inherently different from a denial of a motion for a continuance, which was the motion at issue in *In Re Shaquanna M.*, or a motion for an evidentiary hearing, which was the motion at issue in *Mathews*. *In Re Shaquanna M.*, supra, 61 Conn. App. 605.

In his brief, the respondent launches into a *Mathews* balancing test analysis focused solely on the circumstances of the case status conference, but provides no analysis of the court's consideration and disposition of the motion to open, from which he has taken this appeal. With respect to the motion to open, the burden was on the respondent to show reasonable cause or that a defense existed in whole or in part, and that there was reasonable cause that prevented him from appearing. Practice Book § 35a-18; see also General Statutes § 52-212 (a). The respondent's failure to meet that burden, as discussed more fully later in this opinion, does not obviate the fact that, by filing the motion to open, he was afforded a hearing and, thereby, exercised his right to due process. Under such circumstances, we cannot conclude that the respondent was deprived of his right

to due process. We, therefore, review the merits of the respondent's claim under the abuse of discretion standard applicable to the appeal of a denial of a motion to open a default judgment.

"To open a default judgment, a moving party must show reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense. General Statutes § 52-212 (a). Furthermore, § 52-212 (b) requires that [t]he complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear. It is thus clear that to obtain relief from a judgment rendered after a default, two things must concur. There must be a showing that (1) a good defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause. . . . Since the conjunctive and meaning in addition to is employed between the parts of the two prong test, both tests must be met." (Citation omitted; internal quotation marks omitted.) *In re Ilyssa G.*, 105 Conn. App. 41, 45–46, 936 A.2d 674 (2007), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008).

"Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) Id., 45.

As the trial court correctly observed, the respondent in the present case met neither of the two prongs required for the court to open the judgment of default. As to the first prong, the respondent did not present a good defense. In his motion to open, the respondent averred that he had "a home and child care and [was] completely prepared to take the child home and into his care." In its articulated decision sustaining the order of temporary custody, which was tried to the court just a few months prior to the date on which the respondent filed his motion to open, the court stated that there

was evidence put on by the petitioner regarding concerns over the respondent's substance abuse and domestic violence. The respondent addressed neither concern in his motion to open.

As to the second prong, the respondent did not show that his failure to appear was the result of mistake, accident or other reasonable cause, nor did he "particularly set forth the reason why [he] failed to appear." Practice Book § 35a-18; see also General Statutes § 52-212 (a) and (c). Instead, the respondent simply asserted in his motion to open that he did not receive notice of the case status conference. The record before this court demonstrates that the respondent's attorney was present when the case status conference was scheduled; indeed, the respondent's attorney scheduled the case status conference for 3 p.m. for the respondent's convenience.[6] Furthermore, at the case status conference, the respondent's attorney did not assert that the respondent lacked notice of the scheduled court date. Rather, the reaction of the respondent's attorney, who asserted that the respondent could still be at work because the respondent was not answering his phone, suggests that he expected the respondent to be present at the case status conference. Moreover, the record is devoid of any indication that the respondent's attorney was unable to contact his client after the second day of trial, which the respondent specifically sought to be excused from attending. There is no indication that the respondent and his attorney were unable to communicate with each other or that the respondent was unaware of the outcome of the order of temporary custody hearing, at which time the court not only scheduled the case status conference for a time requested by the respondent through his attorney, but more importantly, sustained the order of temporary custody as to his child.

It is important to note that the circumstances of this case contrast with default judgments in which a party has never appeared in court following a finding of notice at the commencement of a case. This case is one in which the respondent had actual notice of the fact that a petition of neglect was filed, was an active participant and fully represented by counsel in a contested order of temporary custody hearing, and elected to be absent on the day the court issued orders relating to custody of his child and the scheduling of subsequent proceedings. Under such circumstances, it is the burden of the respondent to keep the court, his attorney and the department informed of his whereabouts and his intentions with respect to exercising responsibility for his child. See *In re Ilyssa G.*, supra, 105 Conn. App. 49 ("regardless of whether it was intentional or the result of negligence, the respondent's failure to keep the court, the department and his attorney informed of his whereabouts does not qualify for purposes of opening a default judgment as a mistake, accident or other reasonable cause that prevented the respondent from pre-

senting a defense").[7] Accordingly, the respondent has not demonstrated how his failure to appear was the result of mistake, accident or other reasonable cause.

Furthermore, the respondent failed to abide by the requirement that his motion be verified by oath. Practice Book § 35a-18 mandates that the written motion "shall be verified by the oath of the complainant." The respondent failed to meet that basic requirement. Because the respondent failed to meet either prong required for the court to open the judgment of default and further failed to have his motion verified by oath, we conclude that the court did not abuse its discretion in denying his motion to open the judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 2, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] A default judgment also was rendered against Skylar's mother for her failure to appear at the case status conference, but she is not a party to this appeal. We therefore refer to the respondent father as the respondent in this opinion.

[2] The respondent's motion to open consisted in its entirety of the following: "Pursuant to Practice Book § 17-4 [the respondent] moves this court to open the judgment by this [court] of committing the child to the care and custody of the department. In support of this motion, [the respondent] further states the following: 1. [The respondent] never received notice of the case status conference. 2. [The respondent] has a home and child care and is completely prepared to take the child home and into his care. 3. That it is in the best interests of the child to open the judgment and place the child with [the respondent]."

[3] Practice Book § 35a-18 provides in relevant part: "Any order or decree entered through a default may be set aside within four months succeeding the date of such entry of the order or decree upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a defense in whole or in part existed at the time of the rendition of such order or of such decree, and that the party so defaulted was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same, except that no such order or decree shall be set aside if a final decree of adoption regarding the child has been issued prior to the filing of any such motion. Such written motion shall be verified by the oath of the complainant and shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the party failed to appear."

[4] Pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief of the petitioner in this appeal.

[5] Our Supreme Court has recognized that "[t]he United States Supreme Court [in *Mathews* v. *Eldridge*, supra, 424 U.S. 335] [has] set forth three factors to consider when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative procedure: First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 226 n.20, 764 A.2d 739 (2001).

[6] The respondent acknowledges that, "[u]nder the law of agency, a court, under appropriate circumstances, may default a party for his failure to appear for a scheduled proceeding if the party's attorney had knowledge of the proceeding, on the theory that a party is presumed to know that

which is known to his attorney.'' The respondent also acknowledges that the standing orders for juvenile matters direct that counsel "shall, as necessary, inform each client of the date and time of each court matter." (Emphasis omitted; internal quotation marks omitted.) The respondent nonetheless attempts to shift the burden of notice to the court and argues that it was the court's responsibility to notify the respondent of the case status conference date because, "[f]aced with an unclear and ambiguous order of notice, [the respondent's] counsel would have been justified in believing that he had been relieved of any obligation he may have had under the standing orders to notify his client of the status conference." We are not persuaded. We fail to see how the court's agreement that the respondent should be notified of the case status conference pursuant to the department's request relieves the respondent's attorney from his independent responsibility, under the theory of agency and pursuant to the standing orders for juvenile matters, to provide notice to his client.

[7] To the extent that the respondent did not receive notice of the case status conference from his attorney because of his own negligence in not staying in contact with his attorney, "[n]egligence is no ground for vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion where the failure to assert a defense was the result of negligence. . . . Negligence of a party or his counsel is insufficient for purposes of § 52-212 to set aside a default judgment." (Internal quotation marks omitted.) *In re Ilyssa G.*, supra, 105 Conn. App. 48–49.

--------------------------------